Burnham, Adm'r, vs. Mitchell.

BURNHAM, Adm'r, vs. MITCHELL.

CONTRACTS. (1–5) *Insanity: Avoidance of contract: Statute of limitations: Application of payments.*
EVIDENCE. (6) *Production of note sued on, when excused.* (7) *Action by administrator; defendant as witness for himself.* (8–9) *Opinions of witness as to insanity, etc.* (10) *Other evidence as to insanity.* (11) *Error in rejecting evidence, how cured.*

1. In an action upon a note by the administrator of the payee against the maker, where the defense is based upon an alleged *settlement* between

Burnham, Adm'r, vs. Mitchell.

the parties to the note, pursuant to which the note was delivered up to the maker and cancelled, plaintiff may show the continued obligation of the note by evidence that the payee was *insane* or *non compos*, and incapable of contracting, at the time of such alleged settlement. And 'the question of incapacity to contract, in such a case, is one for the jury.

2. The word "insane" in the *statute of limitations* (sec. 29, ch. 138, R. S.) is not to be confined to persons "wholly without understanding," but includes every person who is *non compos*, or "of unsound or deranged mind," as that phrase is used in the statute of wills.

3. If the payee of a note, when a cause of action therein arises in his favor, has not sufficient mental capacity "to understand what he is about," or is incapable, by reason of mental unsoundness, of managing his affairs, the *six years limitation* does not begin to run.

4. Where the alleged settlement of defendant with plaintiff's intestate was avoided on the ground that at the time it was made the latter was incapable of contracting, and judgment was rendered for the unpaid installments on defendant's note, there was no error (as against defendant) in applying to the payment of the installment *due at the time of such alleged settlement* the notes, property and money paid by defendant to said intestate as a part of such settlement.

5. The fact that, upon such settlement, property was delivered by defendant to plaintiff's intestate, which *cannot now be restored*, is no reason why the *settlement should not be avoided*, defendant being *credited with the value* of such property.

6. Where the answer alleges the surrender and cancellation of the note sued on, it is not necessary for plaintiff to account for its nonproduction at the trial.

7. In an action brought by an administrator, where the widow of the deceased, as a witness for plaintiff, was examined as to conversations between the defendant and such witness during the lifetime of her husband, and also as to conversations *between defendant and the deceased*, in the presence of the witness, defendant could be examined as a witness in his own behalf (under sec. 74, ch. 137, R. S.), only in reference to the *former* class of conversations, and *not as to the latter*. And it makes no difference that in the latter conversations the wife acted as interpreter between defendant and her husband, who could not speak so as to make himself understood.

8. In inquiries respecting mental imbecility arising from age or sickness, it is frequently necessary to receive to some extent the *opinions* of witnesses who are *not experts*, especially of such as were intimately acquainted with the person in question, and had personal care of him.

9. In the present case, there was no error in permitting the widow of

Burnham, Adm'r, vs. Mitchell.

plaintiff's intestate, as a witness for plaintiff, to state whether her deceased husband "ever comprehended the facts concerning the settlement" made by him with defendant; especially where she stated in reply, not only her belief on that point, but facts on which such belief was founded.

10. Proceedings in the appointment of a guardian for an alleged insane or imbecile person are *admissible in evidence* as to his mental condition *at the time such appointment was made*, but not as to his condition at a previous period.

11. Error in rejecting evidence is *cured* by its subsequent admission.

APPEAL from the Circuit Court for *Racine* County.

The plaintiff brought this action as administrator of the estate of William Foster, deceased, to recover $7,196 alleged to be due on a promissory note made by defendant May 3, 1854, for the sum of $4,982.90, payable to said William Foster or bearer, in certain installments falling due on the first of March in each of the years 1857, 1858, 1860 and 1863, with interest payable annually. The complaint avers that no part of the note has been paid except the sum of $1,500, and that there is now due thereon $1,700 which became due March 1, 1860, and $1,500 which became due March 1, 1863, with interest from April 1, 1854. It further avers that in June, 1854, the said deceased became and then was sick, diseased and disabled in body and mind, and then was and forever thereafter to the day of his death continued to be insane, *non compos*, and wholly incapable, physically and mentally, of transacting any business whatever.

The answer alleges that the cause of action stated in the complaint did not accrue within six years, nor within eleven years, of the commencement of the action, and pleads the statute of limitations. It also denies the allegation "that no part of the note has been paid except the sum of $1,500," denies that there is anything due on the note, and also denies all the averments as to Foster's disability, insanity, etc.; and it alleges that during the life of said Foster, defendant satisfied and discharged the claim of said Foster upon the note in suit; and further alleges that about the 3d of March, 1858, defendant

delivered to Foster, and the latter accepted, in full satisfaction of the amount then due upon said note and of defendant's liability thereon, "the following described property and the following amounts of money, to wit: One span of horses, one harness, two wagons, one hundred dollars in money ; also two hundred dollars in money paid to one Volney French, by direction of said Foster, in satisfaction of a certain claim which said French held against said Foster; and also one promissory note for the sum of one hundred and fifty dollars," then executed and delivered by defendant to Foster, and which defendant paid about May 10th, 1860; that the aggregate value of all such property, money payments, etc., was about $1,000; and "that upon the satisfaction of said note (the one in suit), and the discharge of defendant's liability thereon as aforesaid, said promissory note was cancelled and surrendered to defendant."

The evidence at the trial was voluminous, and will not be stated.   The exceptions to the rulings of the court in admitting and excluding evidence will sufficiently appear from the opinion.

The plaintiff not having produced the note sued upon, nor offered any evidence to account for its nonproduction, the defendant moved for a judgment of nonsuit; but the motion was denied.

The court refused to instruct the jury, as requested by the defendant, that "an imbecile person, or a person of weak understanding, is not an 'insane person,' within the meaning of sec. 29, ch. 138, R. S.," or that "weakness of understanding, however great, will not in law bring a person within the definition of 'insane,' unless it betrays a total loss of understanding."   The following extracts from the charge contain the portions thereof excepted to by the defendant:

"The degree of deprivation of mind which will be sufficient to avoid an act done, or give or continue a right, on the ground of insanity, *need not be a total deprivation of mind, but must have some relation to the nature of the act done or to be understood.*

Different kinds of business require different degrees of mental ability to enable a person to do them understandingly.    *    * So long as a person acts rationally, the law makes no distinction between weak and strong minds; and mere weakness of mind, *short of imbecility*, is not a sufficient ground in itself to invalidate a person's acts.    But when the mind becomes enfeebled and disordered by disease, so that the person does not act rationally nor recognize the obvious and ordinary relations of things, but acts without such understanding, or from delusion or insane impulses, then his acts are in law invalid.    *When the capacity to do a certain act is in issue, the question is, whether the alleged insane person had sufficient mental ability to know what he was doing and the nature of the act done.*    *    * In regard to the settlement of March 3, 1858, you will consider *whether William Foster understood* that the relation of creditor and debtor existed between himself and the defendant, that defendant was his debtor to the amount unpaid on the note, and the amount he was receiving in satisfaction of the indebtedness; and whether he had a rational idea of the bearing of defendant's statement as to his ability to pay, and of the propriety, under the circumstances, of accepting a less amount in settlement of his claim.    It is not essential that he should have been able to reason wisely in regard to the business, or that his conclusions should be prudent * * * ; but it is sufficient if he acted rationally, so that you can say that it was not an insane act, or the act of an insane man.    *    *    * In regard to the degree of deprivation of mind to which the deceased must have been subject when the installments on the note became due, to prevent the commencement of the six years limitation, I think * * that *the statute would not begin to run on those days, if the deceased then had not sufficient mental ability to understand that on those days the defendant became indebted to him for the amount of those installments respectively, and that he had the right to require payment.*    *    *    * If you find that the settlement was made on the 3d of March, 1858, it makes a defense, *unless*

*the plaintiff proves fraud or insanity on that day*, or a settled state of insanity prior to that day, so that it is presumed to continue, and throws on the defendant the burden of proving a recovery or a lucid interval. * * * The adjudication that William Foster was insane, made by the county judge on the 1st of November, 1870, is evidence that he was insane on that day, and perhaps conclusive evidence of that fact; but as that was only about two months before Mr. Foster died, it is of but little consequence whether it is only *prima facie* or conclusive evidence. Such adjudication is not evidence of the insanity of William Foster prior to that date. * * * If plaintiff is entitled to recover, he should have a verdict for the amount due on the note and interest, less the payments, and less also the value of the money, notes and property paid and delivered on the alleged settlement, not, however, exceeding in amount the two installments and interest due respectively March 3, 1860, and March 3, 1863. The amount made on the sale of the forty acres should be included in the amount of payments on the note. That sale was for the installment of 1857, and interest up to the time of the judgment,* and there was a surplus of $123.51, which is to come out of the installment and interest due March, 1858. *The installment due in March, 1858, was $1,000, and there was also interest due at the same time to the amount of $294, making $1,294. This is a larger sum than the proof tends to show the value of the property and notes given on the settlement*, with the addition of $123.50 surplus on the sale; and if you find this so, it would leave due the two installments on which the plaintiff claims judgment, and interest from March 1, 1858, and for this amount, if you find for the plaintiff on both installments, you should give him a verdict; or if you find for plaintiff on one installment and not on the other, you

---

* This refers to a judgment of foreclosure of a mortgage given by the present defendant to William Foster to secure payment of the note here sued on.

should give him a verdict for such installment and interest from March 1, 1858." At plaintiff's request, the court added the following instruction: "If you find that William Foster was insane on the 1st of March, 1858, and continued to be insane up to the time of his death, plaintiff is entitled to recover the installments sued on, and interest thereon from March 1, 1858."

Upon special questions submitted to them by the court, the jury found that William Foster was insane on the 4th of March, 1860, and on the 4th of March, 1863; that he was insane for six years from the 4th of March, 1860; that such disability did not cease so as to leave him sane for the period of one year, between March 4, 1866, and the time of his death; that it did not cease so as to leave him sane for a period of six years, between March 4, 1863, and March 4, 1870; that it did not cease so as to leave him sane for one year between March 4, 1869, and the time of his death; that the settlement of March 3, 1858, between said Foster and defendant, alleged in the answer, was in fact made; that on the day of such settlement Foster was insane, and that he was *not induced by fraud* to take part in such settlement. The jury also found that there was due from defendant to plaintiff $3,200, with interest thereon from March 1, 1858, amounting in all to $6,560.

A motion for a new trial was denied, and judgment entered in plaintiff's favor for the sum named in the verdict; from which judgment defendant appealed.

*Fuller & Dyer*, for appellant, contended that as the insanity of plaintiff's intestate is alleged in the complaint *merely to avoid the effect of the statute of limitations* as to the installments of 1860 and 1863, and as the defense had alleged and proven an accord and satisfaction by the settlement of March 3, 1858, the plaintiff, under the pleadings, could not prove insanity at the date of such settlement for the purpose of having the same set aside; that to entitle himself to introduce such evidence, and obtain such *affirmative equitable relief,* the

plaintiff should have laid a foundation for it in his pleadings; that the essential distinctions between legal and equitable remedies have not been and cannot be abolished by the legislature (*Howland v. Needham*, 10 Wis., 498; *Sup'rs v. Decker*, 30 id., 629; *Bonesteel v. Bonesteel*, 28 id., 250); that even if Foster was insane on March 3, 1858, the contract of settlement then made was *voidable* only, and *not void* (2 Kent's Com., 5th ed., 450; *Seaver v. Phelps*, 11 Pick., 304; *Wait v. Maxwell*, 5 id., 217; *Bool v. Mix*, 17 Wend., 134; *Jackson v. Gumaer*, 2 Cow., 552; *Ingraham v. Baldwin*, 5 Seld., 45; *Allis v. Billings*, 6 Met., 415); and that the avoidance could only be by a suit in equity, which should have been brought *within eleven years* after the settlement was made (R. S., ch. 138, secs. 17, 29). 2. They further contended that it was incumbent on the plaintiff, before he closed his case, to give evidence of a subsisting liability from defendant *to him*, by showing the existence of the note sued on; that he should either have produced the note or accounted for its nonproduction; and that the court erred in not granting defendant's motion for a nonsuit on that ground. 3. To the point that the defendant should have been allowed to testify as to the conversations at Foster's house in the presence of Mrs. Foster, in respect to which the latter had testified, counsel cited *Daniels v. Foster*, 26 Wis., 692. 4. To the point that the court erred in excluding the questions put to the witness Alonzo Burgess (see the opinion, *infra*), they cited *De Witt v. Barly*, 17 N. Y., 340; *Clapp v. Fullerton*, 34 id., 190; *O'Brien v. The People*, 36 id., 276. 5. To the point that there was error in admitting in evidence the proceedings for the appointment of a guardian for Mr. Foster, they cited 52 Me., 304. 6. To the point that Mrs. Foster (not being an expert) should not have been permitted to answer the question whether Mr. Foster *ever comprehended* what he had done at defendant's house on the 3d of March, 1858, they cited *Deshon v. Merchant's Bank*, 8 Bosw., 461; *Commonwealth v. Wilson*, 1 Gray, 337. 7. They further argued that as property was delivered, as well as money

paid, by defendant to Foster at the time of the settlement of March 3, 1858, if that settlement was to be avoided, instead of applying the *value* of the property upon the note, thereby converting it into a *compulsory payment* upon an installment past due, the parties should be placed *in statu quo*, especially as the contract of settlement was *bona fide* on defendant's part, and without fraud, as the jury have found. 1 Parsons on Con. (4th ed.), 313; 2 Exch., 487; 4 id., 17. 8. They further argued that the court erred in the instructions which it gave and in refusing the instructions asked by defendant, as to the nature of the "insanity" which extends the statute of limitations, under sec. 29, ch. 138, Tay. Stats.; that by subd. 7, sec. 1, ch. 5, R. S., the words "insane persons" are to be "construed to include every idiot, *non compos*, lunatic and distracted person;" and that it is the obvious intention of these statutes that the word "insane," as here used, shall be construed as synonymous with "*non compos*," as defined *at the common law*. For the common law definition of that term, counsel cited *Beverly's Case*, 4 Coke's R., 123; Coke's Lit., 247 a.; 2 Mad., 569; *Ex parte Barnsley*, 3 Atk., 167; *Jackson v. King*, 4 Cow., 207; *Blanchard v. Nestle*, 3 Denio, 37; *Odell v. Buck*, 21 Wend., 142; *Maddox v. Simmons*, 31 Ga., 512; *Stewart's Ex'rs v. Lispenard*, 26 Wend., 255. As to the meaning of the word "insane," they also cited *Doud v. Hall*, 8 Allen, 410; *Kendall v. May*, 10 id., 59. And they insisted that, applying to this case the settled law in relation to insanity, with reference either to the avoidance of contracts at common law or to the statute of limitations, there was no ground either for the verdict or the instructions given to the jury; that if this was purely an *action at law*, then, in order to establish the incapacity of William Foster, he must be shown to have been *non compos mentis* in the strictly legal sense; that while in equity, and particularly as applied to testamentary capacity, the rule is to some extent modified, especially where there is fraud and undue influence, it is still true in *proceedings at law* that *non compos* means not a partial but an *entire* loss of

understanding; that if the action is to be treated as one in equity, so far as concerns the avoidance of the settlement of 1858, then the language of the lord chancellor in *Ex parte Hall*, 7 Vesey, jr., 261, applies with great force: that "it is of the last consequence that even the court of chancery be careful before establishing the lunacy of a person years ago who has for those years been permitted to act as if sane, and to deal with a great variety of persons, all of whom are entangled in the consequences" (see also *Sergeson v. Sealey*, 2 Atk., 412); and that upon that theory, also, this court should review the testimony as in other equitable causes, and pass upon the question of insanity *de novo*. Counsel then argued at length from the evidence, to show that there was no ground for setting aside the settlement.

*Fish & Lee*, for respondent:

1. The proceedings in the appointment of a guardian for Mr. Foster were admissible to prove his incapacity at the time such appointment was made. 2 Greenl. Ev., 371a; 1 id., 550, 556; 3 Hill, 513; 6 Wend., 497; 2 Paige, 422; 5 id., 242; 11 Abb. Pr., 252; 4 Mass., 147, 149; 12 id., 488; 14 id., 222; 11 Pick., 304; 14 id., 280, 281; 12 Pa. St., 159; 53 id., 97; 6 Barr, 371; 4 Watts, 183; 11 Ga., 337; 11 Eng., L. & E., 230. 2. It was not necessary, under the pleadings, that plaintiff should produce the note or account for its nonproduction. When a debt is once etablished, it is presumed to be owing until payment or some other discharge is shown. Payment is a matter of defense, to be alleged and proven by the defendant. *McKyring v. Bull*, 16 N. Y., 297. So, also, when title to a note is once shown to be in the plaintiff, its continuance is *presumed*, and need not be alleged or proven. *Van Rensselaer v. Bonesteel*, 24 Barb., 365; 17 id., 468; *Taylor v. Corbiere*, 8 How. Pr., 388. 3. Defendant sought to give evidence of personal interviews between himself and Foster. If Foster was sane, the testimony should have been excluded (Tay. Stats., ch. 137, § 74); and if he was insane, any conversation with him would be

wholly immaterial. 4. The construction of the word "insane," as used in the statute of limitations, given by the court below in its charge to the jury, was correct. R. S., ch. 138, sec. 29; and ch. 5, sec. 1, subd. 7; 1 Inst., 2, 46; 1 Black. Com., 303; 44 N. H., 531; 2 Abb. (U. S.), 507; 24 Vt., 424; 37 N. Y., 25; 36 Ala., 522; 1 Met. (Ky.), 35; *Delafield v. Parish*, 25 N. Y., 9, and authorities there cited by Judge DAVIS; 53 Me., 451; *Van Guysling v. Van Kuren*, 35 N. Y., 70; 1 Jarman on Wills (4 Am. ed.), 52, 53, and authorities cited in notes 2, 4 and 5 on p. 53; 2 Greenl. Ev., 371a; *Bond v. Bond*, 7 Allen, 1, 8, and authorities there cited; *Converse v. Converse*, 21 Vt., 168; *Harrison v. Rowan*, 3 Wash. C. C., 585, 586; 4 id., 262, 466; *Oliver v. Berry*, 53 Me., 206; *Bitner v. Bitner*, 65 Pa. St., 347, 361; 52 Me., 304. 5. This action was to recover the installments due March 1, 1860, and March 1, 1863. Foster died January 2, 1871, within eleven years of the time when these installments became due. If he was insane on March 1, 1860, and so continued until his death, plaintiff is entitled to recover, unless there was a valid settlement on March 3, 1858, as claimed. But on that day Foster was insane and could make no contract which would be injurious to him or his estate. The contracts of an insane man are voidable whenever sought to be enforced against him. They are voidable by the party or his legal representative, at any time before a ratification made during a lucid interval; and such rescission may be had without any offer to return what has been received. 2 Black. Com., 291, 292; 2 Kent's Com., 232, 450; 1 Parsons on Con., 334, note, and 387, note; 5 Pick., 431; 6 Met., 417; 7 Allen, 1; 6 Gray, 279, and cases there cited; 4 N. H., 435.

COLE, J. We are unable to see any substantial objections to allowing the plaintiff, as administrator of the estate of William Foster, to show in this action at law on the note, that said Foster, when he made the settlement of March 3, 1858, was insane, and was therefore incompetent to transact business or

manage his affairs. If he was insane or *non compos* at that time, then it is very obvious that he could make no valid contract, and the settlement which he attempted to make would not be binding upon him or his administrator. It seems to us that it stands upon the same grounds as though that settlement were procured by the defendant through fraud or duress, or under such circumstances that a court will refuse to give any force to it. It is said, even if Foster was insane or *non compos* when the settlement was made, still this settlement was merely voidable, and was not absolutely void. Concede that this view of the law is correct : yet how does it tend to establish the position that it was necessary for the plaintiff to resort to an equitable action to set aside the settlement before he could recover the installments which that settlement attempted to discharge ? If the settlement itself was entered into when Foster was insane, then it is not in law a binding agreement, and the fact of insanity may be shown to overcome and avoid any defense set up under it. In the case of *Van Deusen v. Sweet*, 51 N. Y., 378, an analogous question was presented. That was an action to recover real estate. Both parties claimed under Sylvester Sweet as the common source of title; the plaintiff under a devise to her in his will dated in September, 1849 ; and the defendant as tenant of the son-in-law of Sweet, who claimed the premises under a deed from Sweet alleged to have been executed in April, 1864. The plaintiff insisted that this deed was executed by the grantor when he had not sufficient mental capacity to make a deed; and the court held that this fact might be shown by the plaintiff to defeat the deed, although no fraud was alleged, and such incapacity on the part of the grantor had not been legally or judicially determined at the time of or prior to its execution. See also *Phillips v. Gorham*, 17 N. Y., 270 ; *Lattin v. McCarty*, 41 id., 107 ; *Revan v. McDonnell*, 10 Exch. (Hurl. & Gor.), 184. Now, whether the contracts of an insane person are void or only voidable seems to us an immaterial inquiry, so far as the point we are consid-

ering is concerned.   Here the personal representative of Foster is seeking to avoid the settlement, and the question is, can he do so by showing that it is not legally binding by reason of the insanity of the deceased who made it?  He attacks the settlement upon grounds which a court of law must necessarily take cognizance of—as a court of equity would do—when the legal effect and obligation of the settlement are relied on as a defense to the action.   If that settlement was entered into when the deceased was wholly incapable of making a contract in consequence of insanity, or because he was in such an imbecile state as rendered him *non compos*, then it is apparent that it was inoperative and entirely ineffectual to discharge the debt which the plaintiff seeks to recover.   It is a fact established by the verdict in this case, that Foster was insane when this settlement was made, and that this disability to make contracts continued until his death.   When that fact is shown or established, it follows, as a necessary legal consequence, that the contract by which the subsequent installments were attempted to be discharged and extinguished is avoided or set aside, and the right to recover these installments still remains. We see no reason for holding that the plaintiff must first resort to an equitable action to annul the settlement, before he could bring an action at law to recover the debt, which has never been discharged by any binding contract.   See *Mather v. Hutchinson*, 25 Wis., 27.

It is further claimed and insisted that the court erred in not granting the nonsuit, for the reason that the plaintiff failed to produce the note as a part of his case, or to account for its nonproduction, and consequently did not show a subsisting liability against the defendant.   The indebtedness of the defendant might be shown by any competent evidence, and it was not essential to prove it by the note itself.   But doubtless the note should be produced on the trial, or its nonproduction be accounted for.   In this case the answer itself did account for the note, and did show who had possession of it.   In view of these

matters stated in the answer, it was surely not necessary for the plaintiff to produce the note in order to establish the liability of the defendant upon it. When he impeached the settlement by which the note was surrendered to the defendant and cancelled, the liability of the defendant was established. And therefore in opening his case the plaintiff offered evidence of Foster's insanity when this settlement was effected, and that at this time he was mentally incapable of making a valid contract or managing his affairs. When that fact was shown, it avoided and overcame this defense, and further showed that the defendant's liability on the note had not been discharged, but still existed. And it was quite unnecessary, under the circumstances, for the plaintiff to offer any evidence to account for the nonproduction of the note itself, when the answer showed that it was in the possession of the defendant.

A number of objections are taken to the ruling of the court on the admission or exclusion of evidence. It is said the court erred in excluding the testimony of the defendant in respect to the conversations had between him and Mr. and Mrs. Foster, preliminary to and at the time of the settlement. Mrs. Foster had testified quite fully in regard to these conversations, and as to declarations and statements made by the defendant to her and Foster to induce them to accede to the arrangement proposed by him. And it is claimed that the defendant should have been allowed to give his version of the transactions and conversations about which she was called upon to testify, and that the case falls within the proviso of sec. 74, ch. 137, R. S. That proviso in effect declares, that whenever, in any action brought by or against any executor or administrator of a deceased person, a witness shall be called to establish any declaration, conversation, admission or transaction between such witness and the party prosecuting or defending in his own right, then and in all such cases such party so sought to be charged may be examined in his own behalf touching such declaration,

conversation, admission or transaction, the same as he might have been had the opposite party brought or defended the action in his own right and not in a representative capacity, but not in regard to any new matter.

In this case, as we understand the bill of exceptions, the defendant was permitted to testify in regard to all conversations and declarations had with and made to Mrs. Foster not in the presence of her husband. The court confined the testimony to such conversations, and would not permit the defendant to give evidence of communications and transactions which took place between him and Mr. and Mrs. Foster. It appears to us that the court gave the statute its proper construction. The defendant was incompetent to testify except touching the conversations, admissions or transactions which occurred between him and Mrs. Foster, and about which she had been examined. Further than this the proviso does not allow him to be examined in his own behalf. Of course Mrs. Foster was a competent witness in the case, under the provisions of this chapter; and the fact that she had been examined in respect to conversations and transactions which took place between her husband and the defendant in her presence, does not give the defendant the right to testify touching the same things. He is legally incapacitated from giving testimony in the action, except so far as he is made competent by the statute. *Wright v. Hardy*, 22 Wis., 334, and *Daniels v. Foster*, 26 id., 686. Nor can we see that it does or should make any difference that Mr. Foster was unable to talk or make himself understood, and that Mrs. Foster was to a certain extent an interpreter, and served as a medium of communication between the parties. Whatever conversations were held under the circumstances were really between the deceased and the defendant; and so far as those matters are concerned, the disqualification is not removed. If there is any hardship in the operation of the statute when thus restricted, the legislature can change it. As it now stands, we are unable

to put upon it the construction contended for by the counsel for the defendant.

Another error relied on is the ruling of the court in sustaining the objection taken to the question put to the witness Sanborn, wherein he was asked what payments, if any, were made by him in May, 1865, before he received the conveyance from Foster and wife. We are really unable to see any pertinency in the question asked and excluded. It is true, this witness had testified to a business transaction with Foster, and a purchase of land May 27th, 1865, from Foster and wife. But when and how this land was paid for seems to be an immaterial matter, so far as this controversy is concerned. Whether the witness made payments before he received the deed or not, tends in no way to show the state and condition of Foster's mind, even when this transaction occurred. There was therefore no error in excluding the question asked.

Again, it is said the court erred in sustaining plaintiff's objection to the question put to the witness Alonzo Burgess. This witness testified to having certain business transactions with Foster, and to being present, in the winter of 1859, when Foster purchased a horse of Benjamin Burgess. And the witness was asked as to what degree of sagacity Foster manifested in these trades, and what degree of judgment he seemed to exercise in making them. The question was objected to, and excluded. But it appears that the witness went on and answered the question by saying: "I think in the transaction of the business on these two occasions, Mr. Foster understood what he was doing." This removes the objection, even if the original ruling was erroneous.

Still further, it is said the court improperly allowed Mrs. Foster to answer the question whether her husband ever comprehended the facts concerning the settlement made with the defendant March 3d, 1858, when she answered: "I am satisfied in my own mind that he never comprehended it." Now it is

insisted that the admission of this testimony was a violation of the well settled rule of evidence, that one not an expert can not be asked, on an issue in regard to the mental imbecility of a person, whether the alleged insane person was capable of comprehending a business matter. It is said that this was merely calling for the opinion of the witness as to the mental condition of Foster, when she had no special knowledge in regard to insanity, or of what degree of imbecility renders a person *non compos* in law. But we think the question was admissible for the reasons and upon the grounds stated in the case of *De Witt v. Barly et al.*, 17 N. Y., 340. As is well observed by Mr. Justice SELDEN in that case, upon inquiries as to mental imbecility arising from age (and we may add from sickness, like paralysis), it will be found impracticable in many cases to come to a satisfactory conclusion without receiving to some extent the opinions of witnesses. In this case the indications of imbecility and unsoundness of mind were obvious to any one at all acquainted with Foster. The loss of his physical powers— his inability to converse or make himself understood—was not more apparent than the decay of his mental powers, and the weakness of his understanding. His wife was constantly with him, and had the principal care of him after he had the stroke of paralysis in 1854; she dressed him, and was the medium of communication between him and the world; and she was certainly as competent, with all these means of knowing the state and condition of his mind, to give an opinion as to whether he could comprehend a business transaction, as a physician would be. Besides, she gave in her testimony a detailed account of Foster's habits of life before and after the paralysis; stated how he became changed in his acts, conduct and disposition by his sickness; and thus furnished the jury with every practicable means of testing the accuracy of her judgment upon the subject of his mental capacity. It seems to us, therefore, upon principle as well as upon the authority of the well considered case of *De Witt v. Barly*, there was no error in

allowing Mrs. Foster to express her opinion as to whether her husband comprehended the facts of this settlement. She gave her reasons for that conclusion; and one was, that, whenever they were in extremity and needed money, her husband would tell her to go to the defendant and get it. See also *Clapp v. Fullerton*, 34 N. Y., 190; *O'Brien v. The People*, 36 id., 276.

A further objection is, that the court improperly admitted in evidence the application for the appointment of a guardian of Foster in November, 1870. This testimony, it is said, was immaterial, and was also objectionable because the guardianship proceedings, and the order, purported to be an adjudication of the mental incapacity of Foster reaching back many years before the application was made. This is very true, but the court expressly told the jury that this adjudication was no evidence of the insanity of Foster prior to the date it was made, but was evidence of that fact when this adjudication was made. With this qualification, and for the purpose of showing that Foster was insane on the 1st of November, 1870, and that his sickness had so affected him as to render him wholly and entirely incompetent as to his mental faculties to have the charge and management of his property at that time, this order was admissible in evidence. See *Van Deusen v. Sweet*, *supra*.

And this brings us to a consideration of the questions arising upon the statute of limitations, which has been set up in the answer as a bar to this action. Our statute provides that if a person entitled to bring an action — with certain exceptions not affecting this case — be insane at the time the cause of action accrues, the time of such disability shall not be deemed a part of the time limited for the commencement of the action; but that the period within which the action must be brought cannot be extended more than five years by such disability; nor can it be so extended in any case longer than one year after the disability ceases. Sec. 29, ch. 138, R. S. Now one important question upon this branch of the case is, what constitutes insanity within the spirit and meaning of this provision.

On the part of the defendant it is insisted, and the court was requested to so instruct the jury, that an "imbecile person," or a "person of weak understanding," was not an "*insane person*," within its intent and meaning; but that these words imply not weakness of understanding but deprivation of reason, or one "wholly without understanding." The court refused to give to the word "*insane*," as here used, any such limited signification. But the court charged, in substance, upon this question, that the degree of deprivation of mind which would be sufficient to avoid an act done, or give or continue a right, on the ground of insanity, need not be a total deprivation of mind, but must have some relation to the nature of the act done or to be understood: that different kinds of business required different degrees of mental ability to enable a person to do them understandingly; that men's minds naturally differ, and that so long as a person acts rationally, the law makes no distinction between weak and strong minds; and that mere weakness of mind short of imbecility is not a sufficient ground in itself to invalidate a person's acts; but that when the mind becomes enfeebled and disordered by disease, so that the person does not act rationally, nor recognize the obvious and ordinary relation of things, but acts without such understanding or from delusion or insane impulse, then his acts are in law invalid; and that when the capacity to do a certain act is in issue, the question is whether or not the alleged insane person had sufficient mental ability to know what he was doing, and the nature of the act done. And in regard to the settlement of March 3, 1858, the jury were told to consider whether Foster understood that the relation of creditor and debtor existed between himself and the defendant — that the defendant was his debtor to the amount unpaid on the note; whether he understood the amount he was receiving in satisfaction of that indebtedness; whether he had a rational idea of the bearing of defendant's statement as to his ability to pay, and of the propriety, under the circumstances, of accepting a less amount in

settlement of his claim; that it was not essential that he should have been able to reason wisely in regard to the business, or that his conclusion should be prudent — as such a requirement was more than sane men always filled; but that it was sufficient if he acted rationally, so that it could not be said his acts were those of an insane man.    This constitutes the principal part of the charge of the court upon the question of insanity, and in exposition of the meaning of the statute upon that subject; and while some of the language was excepted to and is now criticised as being in conflict with many adjudged cases, still we think the charge is substantially correct.    The statute declares that the words "insane persons" shall "be construed to include every idiot, *non compos*, lunatic and distracted person."    Subd. 7, sec. 1, ch. 5, R. S.    Now the word "insane,' as used in the statute of limitations, in many cases must be construed as equivalent to the term *non compos*, or " a person of unsound and deranged mind," as this last phrase is used in the statute of wills.    Insanity is the generic term for these diseases and others of a kindred character.    See Webster's Dic., "Insanity."    If a person is so unsound of mind, or so deranged in intellect, that he would be incapable of making a valid will, he should be considered "insane" within the meaning and intent of the statute of limitations.    It is true, the degree of imbecility which will render a person legally *non compos*, is sometimes defined as "an entire loss of understanding."    *Jackson v. King*, 4 Cow., 207 ; *Odell v. Buck*, 21 Wend., 143; *Blanchard v. Nestto*, 3 Denio, 37 ; *Maddox v. Simmons*, 31 Ga., 572 ; *Stewart's Ex'rs v. Lispenard*, 26 Wend., 203; *Hovey v. Chase*, 52 Me., 304.    But the rule laid down by the court below to test the legal competency of a party to contract, was, in substance, that such party should have "sufficient mental ability to know what he was doing and the nature of the act done;" and one who does not come up to this standard of intelligence, we think, may well be deemed insane within the statute of limitations.    See *Henderson v. McGregor*, 30 Wis., 78; *Holden v.*

*Meadows*, 31 Wis., 284; *Chapin Will Case*, 32 Wis., 557; *Delafield v. Parish*, 25 N. Y., 9; *Clapp v. Fullerton*, 34 id., 190; 2 Kent, 453. In the case of *Dennett v. Dennett*, 44 N. H., 531–537, it is said that "every person is to be deemed of unsound mind who has lost his memory and understanding by old age, sickness, or other accident, so as to render him incapable of transacting business and of managing his property." This is a relaxation of the old rule that the term *non compos*, of unsound mind, in its legal acceptation, imported a *total* deprivation of sense. And therefore we think if Foster, when the installments on the note fell due, had not sufficient mental capacity "to understand what he was about," and was incapable, by reason of unsoundness of mind, of managing his affairs, then the six years statute of limitations did not begin to run. Furthermore, if he continued in this condition, or, in other words, was insane from the 1st of March, 1860, until his death on or about the 2d day of January, 1871, as the jury found by their special verdict, then the bar of the statute does not apply. It appears to us unreasonable to give the statute any other construction, and to say that a person who was incapable of managing his affairs, had not sufficient capacity to transact business, and "did not know what he was doing, nor the nature of the act done," was not included within its protection. And though the disability of Foster continued until his death, yet the period for bringing the action was not extended more than five years by such disability. It is true, it is claimed on the part of the defendant that the statute commenced to run from the 3d day of March, 1858, the date of the settlement. This position is based upon the theory that the effect of the settlement was to extinguish and discharge all existing indebtedness on the note. But this position is manifestly unsound, for the reasons already given, namely, want of capacity on the part of Foster to make any valid binding contract at the time. He wanted the consenting mind essential to make a legal obligation.

The only remaining question is, whether the court was right as to the amount the plaintiff was entitled to recover, provided the settlement was avoided on the ground that Foster was insane when it was entered into. On that point, the court directed the jury that if the plaintiff was entitled to recover in the action, he should have a verdict for the amount due on the note, and interest, less the payments, and less, also, the value of the money, notes and property paid and delivered on the alleged settlement, not, however, exceeding in the aggregate the last two installments and interest thereon. This was, in effect, holding that the notes, property and money paid and delivered in pursuance of the contract of settlement might be applied in discharge of the installment then due. We see no injustice in this application of that payment. The law would certainly not apply it upon a debt not due. This is too plain for argument.

But it is said, the settlement should not be avoided unless the parties can be placed *in statu quo*, or in the same position they stood before it was made. This is, in substance, saying that the settlement, though made by an insane man — one whom the law holds incapable of making a contract,— shall stand. For the horses, wagons and harness which were turned out on that settlement — saying nothing about the money paid — have doubtless died or been worn out, and cannot be restored. But we do not think there is any inflexible rule of law which requires, in a case like the present, that restitution should be made of everything paid and delivered by the defendant in pursuance of the settlement, as a condition to avoiding it, and of a recovery of the amount due upon the note. See *Gibson v. Soper*, 6 Gray, 279, and *Hovey v. Hobson*, 53 Me., 451. It is sufficient to say that no injustice was done by the application made, since that payment cancelled the amount due on the note March 3, 1858, which considerably exceeded such payment.

On the whole record, we think the judgment was right, and should be affirmed.

*By the Court.* — It is so ordered.

LYON, J., did not hear the argument, and takes no part in the decision of this cause.

