Boorman vs. The Northwestern Mutual Relief Ass'n. ·

BOORMAN, Appellant, vs. THE NORTHWESTERN MUTUAL RELIEF ASSOCIATION, Respondent.

*March 12 — April 3, 1895.*

*Contracts: Validity: Insanity: Evidence: Opinion of nonexpert: Life insurance: Exchange of policies.*

1. To invalidate a man's act by reason of his insanity the proof must show inability to exercise reasonable judgment in regard to such act.

2. In an action upon a benefit certificate which the insured had exchanged, a short time before his death, for another under which there could be no recovery in case of suicide, it being claimed that such exchange was invalid because of his insanity, evidence that he had become sullen and quarrelsome after the death of his wife; that he had treated his mother unkindly, charged her with wanting to get his insurance, and finally left her house in a passion; that he had said men were following him or were going to kill him; that he had had trouble with a fellow laborer; and that he had taken his own life, either deliberately or by accident,— together with the opinion of a medical expert, based on a hypothetical statement of the facts, that he died insane but that he might have been capable of doing ordinary business, depending on the ques-

Boorman vs. The Northwestern Mutual Relief Ass'n.

tion whether there were any delusion in his mind regarding it,— is *held* insufficient to carry the question of insanity to the jury, in the absence of any evidence of any such delusion or that he did not reason intelligently and act rationally in the matter of the exchange, and, on the contrary, it being shown that he did so reason and act.

3. The testimony of a nonexpert witness that he had worked for a few days with the deceased shortly before his death, and that he became quarrelsome and got mad at the witness because of the latter's failure to drive the horse straight while deceased was holding an ice plow, did not show facts entitling such witness to give his opinion on the question of sanity.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge.  *Affirmed.*

Action to recover upon a mutual life insurance policy. The defendant issued an indemnity policy to one Holman Boorman, August 24, 1885.  This policy was conditioned for the payment of certain assessments by the assured, and provided (1) for the payment of forty per cent. of the proceeds of an assessment (not exceeding, however, $500) in case of total and permanent incapacity to perform manual labor; (2) for the payment, in case of death or on the 24th day of February, 1926, of eighty per cent. of the proceeds of an assessment, not exceeding $2,000.  The policy was payable to the assured or, in case of his death, to Maggie Boorman, his wife, if living; otherwise to the heirs of the assured.  It contained no provision avoiding it in case of suicide.  On the 14th day of April, 1887, Maggie Boorman, the beneficiary, died, leaving an infant child, which died two months later.

The complaint claims that Holman Boorman became gradually unsettled in his mind after the death of his wife, so that in January, 1890, he was in fact insane and incompetent to transact business.  It is further alleged, and the fact appears by the proof, that on the 2d of January, 1890, the defendant, having determined to issue a new form of policy,

sent to Holman Boorman by mail a printed document which was a formal application in blank for the surrender · of his old certificate and for a certificate in the new form in exchange therefor, together with a circular letter explaining the advantages of the new form of certificate over the old, and informing old members that they could make the exchange, upon a statement of good health, within sixty days. The proposed new certificate provided that "suicide or self-destruction of the member herein named, whether voluntary or involuntary, sane or insane at the time thereof, is not a risk assumed by the association." It contained also provisions for the payment of partial indemnity in case of accidental loss of hands, feet, arms, or legs, and in case of total blindness; also for the payment, February 24, 1926, of forty per cent. of an assessment, not exceeding $1,000, and for the payment at death of eighty per cent. of an assessment, not exceeding $2,000. These changes were detailed in the circular accompanying the blank application. Soon after receiving these papers Holman Boorman went to the office of the defendant company at Madison, and surrendered his certificate, and thereafter a policy of the new form was issued to him, dated January 29, 1890, but the evidence tends to show that he did not receive it until about March 11, 1890. This last policy was payable to the assured, if living; if not, to his mother (the plaintiff); if none, to his wife; if none, to his parents; if none, then to his heirs. The complaint alleges that Holman Boorman was at the time of this exchange wholly incompetent to transact any business, and that the defendant then and thereby perpetrated a fraud on the assured and his representatives.

Holman Boorman died intestate, March 18, 1890, leaving his mother as his only heir. The complaint alleges that the cause of his death was an "overdose of laudanum, taken while insane." The giving of notice and proofs of death as required by the policy, as well as the performance of all

conditions and payment of all assessments by the assured, is alleged, and judgment is demanded for the sum of $2,000, alleged to be due upon the original policy of insurance. The answer denies any insanity or incompetency on the part of Holman Boorman, and alleges that he exchanged policies voluntarily and while in full possession of his faculties. The answer also alleges that the assured committed suicide, and pleads the clause in the second policy excluding the risk of suicide as a defense.

At the close of the plaintiff's evidence the circuit judge held that there was no proof of insanity or incapacity to transact business, and directed a verdict for the defendant, and from judgment thereon the plaintiff appealed.

For the appellant there were briefs by *Bushnell, Rogers & Hall*, and oral argument by *F. W. Hall*. They contended, *inter alia*, that it is difficult to understand how a witness who was nonexpert could have a better opportunity for judging the mental condition of a person than by constant association with him at the same work for ten hours a day for two weeks time. The ruling excluding such testimony is contrary to the weight of authority. *Woodcock v. Johnson*, 36 Minn. 217; *Colee v. State*, 75 Ind. 512; *Conn. Mut. L. Ins. Co. v. Lathrop*, 111 U. S. 619; 7 Am. & Eng. Ency. of Law, 504; *Burnham v. Mitchell*, 34 Wis. 130; *Yanke v. State*, 51 id. 464; *Smith v. Hickenbottom*, 57 Iowa, 733; *Holcomb v. State*, 41 Tex. 125; *Blackstone v. Standard L. & Acc. Ins. Co.* 74 Mich. 592.

For the respondent there was a brief by *H. W. Chynoweth* and *Burr W. Jones*, and oral argument by *Mr. Chynoweth*. They argued, among other things, that there is no evidence in the case of any insanity on the part of the assured sufficient to warrant the deduction that he was not perfectly competent to understand the transaction by which the exchange was consummated. The proof shows that he did understand it. Under the facts and circumstances of the

case the law itself stamps the exchange as binding and valid. *Lynch v. Doran*, 95 Mich. 395; *Blakely Will Case*, 48 Wis. 294; *English v. Porter*, 109 Ill. 285; Buswell, Insanity, §§ 271, 273, 274, 276; *Tozer v. Saturlee*, 3 Grant, Cas. 162; *Jackson v. King*, 4 Cow. 207, 217 *et seq.;* Cassoday, Wills, §§ 438, 440; *Van Guyslin v. Van Kuren*, 35 N. Y. 70; *Wilson v. Mitchell*, 101 Pa. St. 495; *Chafin Will Case*, 32 Wis. 557; *Prentis v. Bates*, 88 Mich. 567. The opinion of the nonexpert witness as to the sanity of the deceased was properly excluded on the ground that he had not stated sufficient facts on which to predicate an opinion. 7 Am. & Eng. Ency. of Law, 506, 507; *Denning v. Butcher*, 59 N. W. Rep. 69; *Yanke v. State*, 51 Wis. 469, 470; *Turner v. Cook*, 36 Ind. 129; *Mull v. Carr*, 5 Ind. App. 491; Lawson, Expert Ev. 476; *McLeod v. State*, 31 Tex. App. 331; *Hite v. Comm.* 20 S. W. Rep. 217; *Brown v. Comm.* 14 Bush, 405.

WINSLOW, J. After careful examination of the testimony given on the trial touching on the question of the mental capacity of Holman Boorman when he made the exchange of certificates, we are entirely satisfied that the trial judge was right in holding that there was no testimony to go to the jury which tended to prove him mentally incompetent to make a valid exchange. The question was not whether he at some time had a delusion upon some subject, nor yet whether he always reasoned wisely or prudently, but, " when capacity to do a certain act is in issue, the question is whether the alleged insane person had sufficient mental ability to know what he was doing and the nature of the act done." *Burnham v. Mitchell*, 34 Wis. 117. " The law recognizes the fact that there may be derangement of mind as to particular subjects, *and yet capacity to act on other subjects.* . . . The proof which is necessary to invalidate a man's act by reason of his insanity must show inability to exercise reasonable judgment *in regard to such act.*" Busw.

Insan. § 270.    There is no testimony in this case which tends
to show that Holman Boorman did not fully understand
the proposition that was made to him by the defendant com-
pany, and that he did not reason upon it intelligently and
act rationally.    On the contrary, the testimony satisfactorily
establishes the fact that he did so understand, reason, and
act.    We shall not undertake to review the testimony in de-
tail.    The main facts relied upon to prove mental incapacity
are that his disposition seemed to change after the sudden
death of his wife, and that he became sullen, ugly, and
quarrelsome; that he fell out with his mother and treated
her unkindly, finally charging her with wanting to get his
insurance, and leaving her house in a passion, about a week
before his death; that he said one evening in February be-
fore his death that nine men were following him or were
going to kill him, and at another time that a man chased
him at night; that he had trouble with a fellow laborer, and
threatened to lick him; and finally that he took his own
life, either deliberately or by accident.    On the other hand,
the evidence showed that he had fallen into the drinking
habit during the last three months of his life, and was more
ugly when in liquor; that he discussed the question of change
of policies with his relatives; told them that the company
wanted him to change them; that he sent the money to his
mother to pay his assessments; that he wrote on the new
certificate a request that the money be divided,— $500 to
his mother, and the balance to be divided between a sister
and a young lady to whom he seems to have become en-
gaged after his first wife's death.    There is no evidence that
his mind was ever in the least unsettled or flighty upon any
business matter.    There is, it is true, some testimony given
by a medical expert in reply to a hypothetical question, to
the effect that he thought, upon the facts stated, that the
deceased was insane when he died.    He also stated, how-
ever, in substance, that he might have been capable of doing

ordinary business, depending on the question whether there were any delusion in his mind regarding it. There was no evidence of any such delusion, hence we do not regard this testimony of sufficient weight to justify submission of the question to a jury.

There was evidence given by a witness that he worked with Boorman a few days, cutting ice, in February before his death, and that deceased became quarrelsome and got mad at the witness because, as he said, witness did not drive the horse straight while he (Boorman) was holding the ice plow. On the strength of this testimony the plaintiff's counsel proposed to ask him whether, in his judgment, Boorman was of sound mind at the time. An objection to this question was sustained on the ground that the witness had not shown enough facts upon which to predicate an opinion as to insanity, and this ruling is alleged as error. We think the ruling was right. It is the province of the court, in the exercise of a wise, legal discretion, to decide whether the facts on which a nonexpert's opinion as to a person's sanity is based entitle him to express his opinion to the jury. *Denning v. Butcher* (Iowa), 59 N. W. Rep. 69. This must be so, otherwise a nonexpert, after detailing the most trivial circumstance, might state his opinion as to sanity or insanity of the person whose sanity was in question. Such a rule could not be endured. In this instance the trial court rightly exercised its discretion.

This action is brought to recover upon the first or original certificate, and, it appearing that there was a valid surrender of that certificate or contract and acceptance of a different contract, the court was entirely right in directing a verdict for the defendant.

*By the Court.*— Judgment affirmed.