ESTATE OF SCHALLA: SCHALLA, Appellant, vs. ROBERTS and others, Respondents.

*October 8—November 5, 1957.*

40

For the appellant there was a brief by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Richard H. Stafford*.

For the respondents there was a brief and oral argument by *John R. Frampton* of Chippewa Falls.

WINGERT, J. We have reached the conclusion that the application for veteran's benefits, Exhibit 73, should have been admitted in evidence, that it constituted a sufficient acknowledgment of paternity to meet the requirements of sec. 237.06, Stats., and· that therefore the court erred in determining that the appellant·was not the heir of the decedent.

1. The· trial court found as a fact that decedent was mentally incompetent when Exhibit 73 was executed on

July 5, 1920, and excluded the proffered exhibit on that ground, among others. The finding of incompetency was based wholly upon the commitment of the decedent to the state hospital for the insane by the county judge on June 24, 1920. There was no other adequate evidence that decedent was incompetent to sign an acknowledgment of paternity at the time in question.

We cannot agree that either the commitment to the hospital or the finding on which it was based warranted the present finding that decedent was incompetent to acknowledge paternity. While an adjudication of insanity has been held to create a presumption of mental incompetency thereafter at least for a substantial period, *Estate of Staab,* 166 Wis. 587, 592, 166 N. W. 326, we think such presumption rebutted if not avoided in the present case by circumstances discussed hereinafter; and that therefore Exhibit 73 was entitled to the usual presumption that the person who executed it was competent to do so.

The material part of sec. 237.06, Stats., is as follows:

"Every illegitimate child shall be considered as heir of the person who shall, in writing signed in the presence of a competent witness, have acknowledged himself to be the father of such child. . . ."

We need not agree with appellant's argument that the statutory requirement of a "competent witness" shows that the mental condition of the father is immaterial. For present purposes we assume that if an acknowledgment of paternity is to be effective, the signer must be mentally competent to do the particular act required by the statute. Thus we take the test of decedent's capacity to make an effective acknowledgment of paternity under sec. 237.06, Stats., to be the same test applied in the case of contracts and other property transactions, *i. e.,* did he have sufficient mental ability to know what he was doing and the nature

of the act done. *Boorman v. Northwestern Mut. Relief Asso.* 90 Wis. 144, 148, 62 N. W. 924; *Plainse v. Engle,* 262 Wis. 506, 511, 56 N. W. (2d) 89, 57 N. W. (2d) 586.

The degree of mental ability required to acknowledge paternity is not great. Under sec. 237.06, Stats., it is not essential that the written acknowledgment shall be made for the express purpose of establishing heirship or of complying with the statute; indeed it may be made in entire ignorance of the statutory requirements and for purposes other than that of establishing heirship. *Richmond v. Taylor,* 151 Wis. 633, 643, 139 N. W. 435. This court has gone far in holding that writings in which the recital of parenthood was purely incidental meet the requirements of sec. 237.06, although not intended to affect inheritance. *Estate of Ecker,* 174 Wis. 432, 182 N. W. 977.

A man may be incompetent on some subjects and yet be quite competent with respect to others.

" 'The law recognizes the fact that there may be derangement of mind as to particular subjects, *and yet capacity to act on other subjects.* . . . The proof which is necessary to invalidate a man's act by reason of his insanity must show inability to exercise reasonable judgment *in regard to such act.*' " *Boorman v. Northwestern Mut. Relief Asso.* 90 Wis. 144, 148, 62 N. W. 924.

Thus a will made by a person having insane delusions on a single subject may be valid, where the delusions do not materially affect the will. *Will of Lundquist,* 205 Wis. 667, 675, 238 N. W. 861. Also, a person may be incompetent much of the time, and yet have rational periods when his acts will be accorded full legal effect. *Estate of Knutson,* 275 Wis. 380, 384, 82 N. W. (2d) 196. This court has pointed out that the usual presumption that insanity once established continues thereafter does not apply to cases of occasional or intermittent insanity. *State v. Wilner,* 40 Wis. 304, 306;

*Hempton v. State,* 111 Wis. 127, 138, 86 N. W. 596; Anno. 27 A. L. R. (2d) 121, 124.

The commitment of decedent to the hospital for the insane was made pursuant to secs. 51.01 to 51.05, Stats. 1919, which provided that upon filing of a petition alleging belief that a person is insane, the county judge shall cause an examination to be made by appointed physicians, who shall make a written report consisting of answers to specified questions; and that upon the filing of such report, and a hearing including jury trial if requested, "If the judge or a jury find that the person thus alleged to be insane is a fit subject to be sent to a hospital or asylum for the insane, the judge shall order him to be committed as hereinafter provided." Sec. 51.05 (1), Stats. 1919. Thus the required finding was only that the person suspected of insanity "is a fit subject to be sent to a hospital or asylum for the insane." A person might well be a fit subject for mental treatment without being incompetent to do an act of legal significance.

The order of commitment was made on a printed form containing a printed finding that decedent was "insane." Attached to the order was the report of two examining physicians, which consisted of longhand answers to a printed questionnaire. The doctors expressed the opinion that decedent was insane and recommended that he be sent to an institution. They reported that the mental disease was first noticeable about May 1, 1919, that there had been one continuous attack, and that it was increasing.

To the question, "On what subject, or in what way is derangement now manifested?" they answered, "Has delusions of being persecuted by all fellow workmen. Says they think he is a greater prophet than he really is, though he made some good guesses." To the question, "Has the patient shown any disposition to injure others?" they answered, "Yes. Getting in trouble frequently and has carried a gun

as protection. Had several fist fights. When in strange town people make remarks *e. g.,* Great prophet."

In the medical report there also appear the following significant question and answer: "*Q.* Are there rational intervals? *A.* Yes. Talks correctly when mind is relieved of fear."

While the order recites in the printed part of the form that it is based on the physicians' report and other evidence submitted, there is nothing in the record to show what if any other evidence there was. Thus the determination of the committing judge, read in the light of the statute pursuant to which it was made and the doctors' report on which it was founded, amounts to no more than a finding that decedent was a fit subject to be sent to the state hospital at Mendota by reason of an insane delusion that he was being persecuted by his fellow workmen and others because of his status as a prophet, which delusion had rendered him quarrelsome and dangerous to be at large, notwithstanding that he had rational intervals when his mind was relieved of fear.

In our view that finding was not inconsistent with the existence of mental capacity to acknowledge parenthood.

Other circumstances tending to rebut any presumption of incompetency were (a) the fact that a notary public administered an oath to decedent and attached his jurat to Exhibit 73 expressly certifying that the statements made therein were made known to the signer; thus indicating the notary's belief that the decedent was competent to take an oath and execute the document; and (b) the fact that Exhibit 73, an application for veteran's benefits, was approved and acted upon favorably by the government agency to which it was addressed. It is also significant that the acknowledgment of paternity was entirely consistent with the true fact as found by the court and with acts of the decedent prior to his commitment. Thus decedent called at the Vowinkel home

to visit the child, referred to the child as his son, and sent money to the grandparents who were caring for the boy.

We therefore hold that the normal presumption that on July 5, 1920, decedent had sufficient capacity to execute the application for veteran's benefits appearing in the record as Exhibit 73, and to know what he was doing and the nature of the act done with respect to the statement appearing therein that the child Louis William Schalla Vowinkel, born March 10, 1918, was his child, was not destroyed by the order of commitment made on June 24, 1920, nor by the incarceration of the decedent in the mental hospital pursuant thereto, nor by any other evidence in the record. It follows that the objection to Exhibit 73 on the ground of mental incapacity should have been overruled.

2. Objection to the receipt of Exhibit 73 in evidence was also made and sustained on the ground of an unexplained alteration. *Page v. Danaher,* 43 Wis. 221, 225; *Maldaner v. Smith,* 102 Wis. 30, 36, 78 N. W. 140; *Bradley v. Dells Lumber Co.* 105 Wis. 245, 254, 81 N. W. 394, are cited to the effect that where an alteration in an instrument is made in a different hand or in different ink, and the appearance of the instrument or the circumstances give rise to the suspicion that the alteration may have been made after delivery, then the alteration must be explained before the instrument can be received in evidence.

In the present case the question, "Have you now living a child or children" was apparently first answered "No," and then a line was drawn through the negative answer and the words, "Yes, an illegitimate child," with the name and birth date of the child, were inserted in the appropriate blanks in handwriting somewhat different than that in which most of the answers contained in the application were made.

We think that any suspicion aroused by the change in the original answer, in a different hand, is sufficiently allayed by the facts that the document was executed at a state

hospital, was directed to an agency of the federal government, was acted upon favorably by that agency, and has presumably remained in the files of that agency and its successors until it was produced at the trial; and that payments were made for the benefit of the child on the strength of the very answer that was inserted by way of alteration, plus a baptismal certificate. These circumstances give enough assurance of regularity to shift to the objectors the burden of producing evidence to show that the alteration was made after signature and without authority from the decedent. As they offered no such evidence, it must be presumed that the fact was otherwise and the document regular and fully effective.

3. The application, Exhibit 73, was excluded for the further reason that the person in whose presence it was signed was not produced at the trial, nor the failure to produce him explained.

While sec. 237.06, Stats., requires an acknowledgment of paternity "in writing signed in the presence of a competent witness" it does not require that the witness attest or subscribe the writing. *Richmond v. Taylor,* 151 Wis. 633, 643, 139 N. W. 435.

Sec. 327.23, Stats., dispenses with the testimony of attesting witnesses where the instrument is not "required by law to be attested."

Moreover, at the foot of Exhibit 73 is a jurat bearing the words "Subscribed and sworn to before me this 5th day of July, 1920, by Frank Schalla, claimant, to whom the statements herein were fully made known and explained," followed by the signature "Alfred C. Nordvi," the title "Notary Public," and Mr. Nordvi's notarial seal and the expiration date of his commission.

By sec. 137.01 (5), Stats., the certificate of a notary public is presumptive evidence of the facts stated therein "in cases where by law a notary public is authorized to certify such facts." Sec. 137.01 (3) authorizes notaries public to administer oaths, take acknowledgment of deeds, and perform

such other duties as by the law of nations or according to commercial usage may be exercised and performed by notaries. It is the universal practice in this state for notaries to execute jurats certifying that the writing was "subscribed and sworn to before me." Notary Nordvi acted within his lawful powers in administering the oath and signing the jurat, and his certificate is presumptive evidence of the facts therein stated.

Therefore it was not necessary to produce Mr. Nordvi or explain the failure to do so. His certificate and seal made a *prima facie* case that Exhibit 73 was subscribed by decedent in the presence of a competent witness, to wit, the notary himself.

4. It is further argued that Exhibit 73 was inadmissible in evidence because it was confidential and privileged by virtue of an act of congress. The statute referred to provides that all files of the Veterans Administration pertaining to any claim for benefits "shall be deemed confidential and privileged and no disclosure thereof shall be made except . . . in . . . judicial proceedings, when in the judgment of the administrator of veterans' affairs such disclosure is deemed necessary and proper." 38 USCA, sec. 456 (c). It was objected that no determination that disclosure is necessary and proper was shown to have been made by the administrator of veterans' affairs. The objection was overruled by the trial court, we think properly, on the ground that the privilege had been waived.

Mr. McGuire, the chief of the field examination service of the chief attorney's office, Milwaukee regional office of the Veterans Administration, testified that he had written instructions from the chief attorney to comply with the *subpoena duces tecum* calling for the production of Exhibit 73. A regulation promulgated by the administrator of veterans' affairs, effective December 28, 1956, provides in substance that the chief attorney of the field station of the Veterans Administration in which the desired records are

located shall determine the action to be taken with respect to the production of privileged documents pursuant to *subpoena duces tecum* from state courts. Code of Federal Regulations, Title 38, sec. 1.511 (a) and (c). This regulation was in effect at the time of trial. Thus it sufficiently appears that the authority conferred by congress upon the administrator of veterans' affairs to waive the privilege with respect to documents such as Exhibit 73 has been delegated to the chief attorney of the Milwaukee regional office, and that the chief attorney acted in the premises by instructing Mr. McGuire to produce the document. Thus the privilege was effectively waived.

5. Additional objection to Exhibit 73 is based on a provision of the applicable regulation of the Veterans Administration, 38 CFR, sec. 1.511 (c), that when copies of documents are requested by the process of any state court, the process "must be accompanied either by authority from the claimant concerned to comply therewith or by an affidavit of the attorney of the party securing the same," setting forth the character of the suit and the purpose for which the documents are sought. Here the claimant is dead and the record does not show affirmatively that the *subpoena duces tecum* was accompanied by an attorney's affidavit.

Mr. McGuire produced the requested document without objection, and testified that he had authority from his superior, the chief attorney of the Milwaukee regional office, to produce it, and that to the best of his knowledge and belief the applicable regulation had been complied with. This was *prima facie* sufficient we think, to warrant the admission of Exhibit 73 either on the ground that the required affidavit had presumptively been filed, or on the alternative ground that the affidavit had been waived.

6. For the reasons above stated we hold that Exhibit 73 was properly admissible in evidence and that it was an acknowledgment of paternity in writing signed in the presence of a competent witness sufficient to meet the require-

ments of sec. 237.06, Stats. The court having found on adequate evidence that appellant was in fact the illegitimate son of the decedent, it follows that appellant was entitled to be adjudged the heir.

*By the Court.*—Judgment reversed, with directions to adjudge petitioner William Vowinkel Schalla to be the heir of Frank W. Schalla, deceased.