Mr Chief Justice Marshall
 

 delivered the opinion of the Court.
 

 This ig an appeal from a decree of the district court of Missouri, sitting under the act of the 26th of May 1824.
 

 The devisees of Auguste Chouteau, a citizen of Missouri, presented their petition to the district court, in'which they
 
 *152
 
 state that their testator, on the 8th clay of January 1798, being then a resident of upper Louisiana, obtained from Don Zenon Trudeau, lieutenant governor of that province, a decree directing Don Antonio Soulard, the surveyor-general of the province, to put the said Chouteau in 'possession of the land prayed for; and to survey the same, and make a plat and certificate therer of, to enable the said Chouteau to solicit a complete title thereon from the governor-general; who,, by the said decree, was informed t.hat the said petitioner’s circumstances were such as to entitle him to that favour. In pursuance of this decree, the survey was executed on the 20th of December 1803, and the said Chouteau put into possession of the tract surveyed, amounting .to one league square, which he retained till his death, when he devised it to the petitioners, who have remained in possession ever since.
 

 All the steps required by law for the preservation of the title acquired by the decree of the lieutenant governor, have been taken.
 

 The petitioners pray that their right and title to the land they claim may be confirmed.
 

 The answer of the district attorney admits nothing, and refers the claim to the court.
 

 Some testimony was'taken to show that the said Auguste Chouteau was, at the date of his petition, and of the decree of the lieutenant governor, and at the date of the said survey, possessed of at least one hundred head of tame cattle, from two to three hundred hogs, from one hundred and forty to one hundred and fifty horses, about forty sheep, and from fifty to sixty slaves.
 

 The United States gave in evidence a petition of the sata Auguste Chouteau, presented on the 24th day of January 1798, to the lieutenant governor of upper Louisiana, praying for a concession of seven thousand and fifty-six arpents of land, situated'on the north bank of the Missouri, about one hundred and five miles from its mouth'; which petition was granted on the succeeding day. A.survey of this tract was executed on the 17th of March 1801 ; and it appears to have been, conveyed by Auguste Chouteau.to Daniel Clarke, by deed, bearing date the 8th of September 1804. This claim was offered to the board of commissioners, but being
 
 “
 
 unsupported by actual
 
 *153
 
 inhabitation and cultivation,” was rejected. The board at the same time observed, that the said concession is not duly registered.
 

 The only objection which can be made to the validity of this concession.is, that the petitioner did not possess as many tame cattle as the regulations of O’Reilly required. The eighth article of those regulations declares, that no. grant in the Opelousas, Attacapas and Natchitoches shall exceed one league in front by one league in depth. The ninth is in these words, “to obtain in the-Opelousas, Attacapas and Natchi-toches, a grant of forty-two arpents in depth, the applicant must make it appear that he is possessed of one hundred'head of tame cattle, some horses and sheep, and two slaves to look after them; a proportion which shall always be observed for the grants to be made of greater extent than that declared in the preceding article.”
 

 There is .some confusion in these two articles, which would lead to a suspicion that the translation may ñót be accurate. The eighth declares (hat no grant shall exceed a league square; and the ninth, if to be understood literally, professes to prescribe the property which the applicant must possess to entitle him to a larger quantity than a league square.
 

 . -It is also observable that this article is limited to the three districts mentioned, which are not in upper Louisiana; and that they are peculiarly adapted to a grazing country, and t.o a grazing country only. There could be no motive for apportioning one hundred head of cattle to two slaves, in an agricultural country. It is probable that if the regulations of O’Reilly were extended to upper Louisiana, they were extended with modifications', at least of the ninth article; so as to adapt the proportions of- property required to the country to which the article was extended.
 

 -, This supposition derives great strength from the fact that the lieutenant governor, who must have understood his orders, cértifies to the governor in his decree, “that the.said applicant is in the circumstances that merit this favour.” The applicant is proved to have possessed more slaves than were required by the ninth article of O’Reilly’s regulations, though not so many tame cattle.
 

 We think also that'in the spirit of the decisions which have
 
 *154
 
 been heretofore made by this court, and pf the acts of confirmation passed by congress, the fact that the applicant possessed the requisite amount of property to entitle him to the land he solicited, was submitted to the officer who decided on the application, and that be is. not bound to prove it to the court, which passes on the validity of the grant. These incomplete titles were transferable, and the assignee might not possess the means' of proving the exact. number of cattle in possession of the petitioner when the concession was made.
 

 It is remarkable that, if we may trust the best information we have on the subject, neither the governor, nor intendant-general has ever refused to perfect an incomplete title granted by a. deputy governor ór sub-delegate.
 

 We cannot allow this objection to prevail.
 

 The objection drawn by the United States from the concession made on the 24th of January 1798, is not, we think, entitled to more weight. The eighth regulation made by O’Reilly, is not that no individual shall receive grants for more land than one league square, but that no grant shall exceed one league square. The words of the'regulation do not forbid different ■ grants to the same person ; and so far as our information.goes, it has never been so construed. Neither of these grants, so far as we understand the geography of the country, lies in Ope-lousas, Attacapas or Natchitoches. It does not appear that the grant made on the 24th.of January has been established
 
 ;
 
 and the record shows that it was rejected by the board of commissioners, for reasons oh the sufficiency of which' we do not now decide. But 'it is conclusive that the concession of the 24th of January was subsequent to that of the 8th, and consequently could not affect it.
 

 We are of’opinion that the district court erred in declaring the concessipn made to Auguste Chouteau on the 8t.h of January 1798 to be invalid
 
 ;
 
 and that the same ought to be confirmed.
 

 The decree of the district courtis reversed and annulled, and this court, proceeding to give such decree as the district court ought to have given, doth declare, the claim of the petitioners to the tract of land in their petition mentioned, to be valid, and doth confirm their title to the same, acccording-to the boundaries thereof, as described in the survey made by James Rankin,
 
 *155
 
 deputy.surveyor, and certified by Anthony Soulard, principal deputy surveyor of upper Louisiana, as appears by his certificate of. the 29th of December 1803, contained in the record.
 

 This cause came on to be heard on the transcript of the record from the district court of. the United States for the district of Missouri, and was argued by counsel; on consideration whereof, this court is opinion that the claim of the appellants is valid, and ought to be confirmed. Whereupon, it is ordered, adjudged and decreed bj this court, that the decree of the said district .court in„this cause be, and the same is. hereby reversed and annulled; and this court proceeding to pronounce such decree as the said district court ought to have given, doth declare the Naim of the petitioners to the tract of land in their petition mentioned, to be valid, and doth confirm their title to the same according to the boundaries' thereof, as described in the survey made by James Rankin, deputy surveyor, and certified by Antonio' Soulard, principal deputy surveyor of upper Louisiana, as appears by his certificate of the 29th December 1803, contained in the record.