89 U.S. 254
 22 L.Ed. 837
 22 Wall. 254
 CONNOYER ET AL.
v.
SCHAEFFER.
 October Term, 1874
 
 ERROR to the Supreme Court of Missouri; the case being thus:
 An act of the 2d March, 1805,[1] for enabling claimants of land in the territory acquired by us from France in the year 1803 (within which territory the present State of Missouri is included), to have their incomplete titles to lands confirmed and perfected, enacts that the claimant of such land shall file within a certain time, with the register or recorder of land titles of the district, his notice in writing, together with every grant, 'order of survey, deed, conveyance, or other written evidence of his claim,' and that unless he shall so file 'such written evidence,' all his right shall be void. 'Nor shall any grant, . . . deed of conveyance, or other written evidence,' says the act, 'which shall not be so recorded, as above directed, ever be considered or admitted in evidence in any court of the United States, against any grant derived from the United States.'
 The act then provides for the appointment of commissioners, who were to hear and decide in a summary manner 'all matters respecting such claims.'
 By a subsequent act, one of 21st April, 1806,[2] the time for filing the 'notices in writing and written evidences of claims' was extended, but with a similar provision, as to all claims not so presented being barred, and the evidence of them not admitted in evidence if not so filed. The act enacts that oral testimony may be heard in support of or opposition to such claims.
 Under these acts many old French and Spanish tiles in Missouri were examined and confirmed. But the acts expired before all that were filed could be disposed of. Accordingly new acts were passed; one July 9th, 1832, and one March 2d, 1833,[3] providing 'for the final adjustment of land claims in Missouri.' These acts provided for a board of commissioners to 'examine all unconfirmed claims to lands in that State heretofore filed in the office of said recorder according to law;' and enacted that in examining these claims heretofore filed, they 'shall proceed in the examination in a summary manner, with or without any new application of claimants.' Under these acts, therefore, no new claim could be filed before the board; the commissioners were only to pass upon the claims already filed.
 These statutes being on the statute-book, Louis Labeaume, on the 27th of June, 1808, gave notice to the old board of commissioners—that is to say, the board proceeding under the acts of 1805 and 1807—of his claim to a lot of land—a common field lot in the city of St. Louis. The tract had been conceded in 1772 by the acting lieutenant-governor of the Spanish government to a certain Francoise, widow Dodier; Labeaume, of course, claiming by conveyances under her.
 The conveyance to Labeaume, as filed before the boards as evidence of his title, showed two different conveyances on the same paper. One conveyance was from eight persons named, who purported to be the right heirs of the widow Dodier, and was dated 18th August, 1806; one of the eight persons being a certain Joseph Hortez, who signed the conveyance in behalf of Margaret Bequette, his wife, as one of the heirs of the said widow. The other conveyance was from the same Hortez, and in this conveyance he conveys the tract as having been acquired by him, at a judicial sale, as the property of the said widow, made and ordered by the lieutenant-governor; but the proces verbal (or record, to use the English term) of which sale and adjudication, the deed recites had been lost in the secretary's office. This deed was dated the 23d August, 1806, was acknowledged, and with the acknowledgments appended thereto was recorded in the recorder's office of St. Louis County.
 The board before which Labeaume appeared and presented the concession and his derivative title-papers—that is to say, the board acting under the acts of 1805 and 1807—did not confirm his title.
 Labeaume himself died in 1821, having made a will by which he devised all his estate to his widow.
 After the passage of the acts authorizing the appointment of a board to examine claims previously filed according to law, but not confirmed, a son of Labeaume appeared before the new board and presented in behalf of his mother as now representing the original claimant, the claim originally filed by Labeaume. And in June, 1835, this board reported 'that this claim ought to be confirmed to the said widow Dodier or her legal representatives,' and it was so confirmed accordingly, by act of Congress of July 4th, 1836.
 In this state of things, a certain Schaeffer (A.D. 1860) being in possession and now confessedly vested with whatever title was vested by these proceedings in Labeaume, Connoyer, and others (who it was equally admitted was, as to a part of the premises in controversy, vested with whatever title passed to the heirs of the widow Dodier by virtue of the confirmation) sued him in ejectment.
 On the trial, the plaintiffs, already mentioned as heirs of the widow Dodier, relied on the confirmation as being to her, and to her legal representatives, contending that from defective execution the deeds upon which Labeaume founded his derivative title could pass no title, and therefore that there could have been no confirmation to him made upon them.
 The defendant, who had put in evidence the original deeds set out in the proceedings of the first board, relied much more on the confirmation; he contending that the history of these confirmations of land claims under the already-mentioned acts of Congress showed that there were two classes of cases which came before the boards:
 1st. Where the claimant exhibited only the original concession and did not attempt to show any title out of the person to whom the concession had been made originally.
 2d. Where, with the original concession, there were exhibited mesne conveyances, which the claimant relied on as bringing the title down to himself.
 And that while in the former class of cases nothing was established on a confirmation to the original grantee and his representatives but the title of that grantee, in the second, under the decision of this court in Bissell v. Penrose[4] both the title of the original grantee and the derivative title to the claimant were established.
 The defendant therefore insisted that the regularity of the papers accompanying Labeaume's claim could not be inquired into, as the confirmation when made inured to Labeaume, if living, and if dead, to his legal representatives.
 The court in which the ejectment was brought held that the confirmation of the lot sued for inured to Labeaume, and those claiming under him, and not to the widow Dodier and her heirs. As the plaintiffs claimed as such heirs, that ruling of the court decided the whole case. The holding being affirmed in the Supreme Court of the State of Missouri, the plaintiffs brought the case here.
 The question, of course, was to whom did the confirmation inure? If to Labeaume, then it was an unimportant inquiry whether the title-papers produced by him were imperfectly executed or not. If to the legal representatives of the widow Dodier, the inquiry was important.
 It may be here added, though the thing is scarce worth reporting, that for the purpose of showing that those from whom he sought to deduce title were claimants before the land commissioners, the plaintiff sought to introduce, in connection with the Dodier claim, a certified copy of a request in writing, as found of record in the office of the recorder of land titles in and for the Territory of Missouri, signed by one T. B. Reddick and twelve others, in which these thirteen requested the recorder, 'for the benefit of all parties interested, to record the registered concessions in Livre Terrein, Nos. 1, 2, 3, 4, 5, and 6, on file' in his office. It did not appear that those under whom the plaintiffs claimed had any agency in giving this notice. No evidence was offered connecting them with the transaction, nor did it appear that any signer was interested in the lands or represented any one who was.
 The court in which the ejectment was brought rejected this evidence; and the Supreme Court, adverting to the characteristics of it just mentioned, confirmed its action; adding 'that the paper pointed to a mass of books, and asked that certain records should be made, but named no claimant, described no lands, and did not intimate that any one was in fact claiming under any of the concessions referred to.'
 Mr. C. C. Whittelsey, with whom was Mr. H. A. Cunningham, for the plaintiffs in error, asserted the true rule of law to be, that where the board of commissioners omitted all mention of the person presenting the claim as assignee of the original grantee of the former government, and confirmed the claim to the legal representatives of the person who held the claim by grant from the French or Spanish governments, then that the confirmation inured to the benefit of the persons showing themselves to be the legal representatives of such grantee by inheritance as heirs, or by will as devisees, or by conveyance as purchasers, and did not inure to the benefit of the party filing the claim, except so far as he showed himself by plainly good muniments to be the legal representative by descent, devise, or purchase.
 It was impossible, the counsel argued, to read over the list of claims filed before the board of commissioners, or with the recorder of land titles, prior to 1814, and then to examine the list of confirmations, without observing in how many cases the commissioners confirmed the claims as against the United States, but refused to decide that the claimant was the person entitled to the land by derivative title. By examining these reports it would be seen that the commissioners issued certificates sometimes by name to the person filing the claim, sometimes to the claimant as assignee, and sometimes to the representatives of the person under whom the claim was claimed.[5]
 The form 'to the original concessionee or his legal representatives' by descent, devise, or purchase, left the question open to inquiry in a court of justice, to whom the certificate, confirmation, or patent should inure, and thus saved the officers of the government the necessity of deciding upon many and difficult questions of derivative title. When, therefore, the board of commissioners in their action, June, 1835, declared that this claim ought to be confirmed to the said 'widow Dodier or her legal representatives,' they plainly showed that they did not intend to confirm the land to Labeaume or his representatives by name, for he was not named in the judgment of confirmation.
 The assumption that the judgment of confirmation inured to the benefit of the person who filed the claim in all cases, when the party presenting the claim presented any evidence whatever, to show a derivative title from the original concessionee of the former governments, took from the board of commissioners all authority to pass upon the validity of the derivative title, and rendered their decision nugatory. Must they decide in express words that the derivative title was invalid, and so enter it of record and reject the claim for that reason, although as against the government the original claim was equitably entitled to confirmation, or were they at liberty to put this question by and leave it to be settled by the courts as advised by the attorney-general?
 Of course, if the confirmation inured to Labeaume simply because he in person appeared to present the claim, that closed the case; but such a position could not be maintained.
 The learned counsel, referring to Bissell v. Penrose,[6] much relied on by the plaintiff, contended that if it applied to this case at all, it was in reality inconsistent with the well-established rule in regard to the confirmation of land claims previously laid down in Strother v. Lucas,[7] and moreover could not be reconciled with what of quite late time had been implied in Hogan v. Page;[8] that, in addition, the case could not be maintained on principle.
 The rejection of the copy of the paper signed by Reddick and the twelve others, was not strongly insisted on.
 Messrs. Glover and Shepley, contra, contending that the confirmation inured to Labeaume, relied on Bissell v. Penrose, in support of that position, arguing that the cases of Strother v. Lucas and Hogan v. Page were misconceived and misapplied by the learned counsel opposing.
 Mr. Justice DAVIS delivered the opinion of the court.
 
 
 1
 The substantial point of inquiry presented in this case is, to whom did the confirmation inure? The question which we are thus called on to answer, is not a new one. If it were, it would certainly not be free from difficulty. It has, however, been settled so long that it has become a rule of property, and it would produce infinite mischief to disturb it.
 
 
 2
 Two classes of claims were presented to the commissioners—one where the claimant exhibited with his claim evidence of a derivative title from the concedee, the other where he only produced the original concession without attempting to show his connection with it.
 
 
 3
 In the latter class of cases the claim, if confirmed, has been held to have the effect of a confirmation to the legal representatives of the person to whom the original concession was made. This ruling proceeds upon the theory that the commissioners passed upon nothing but the merits of the original concession, having no opportunity to pass upon the validity of anything else. Of this class, where no evidences of derivative title at all were filed with the concession is the case of Hogan v. Page.[9]
 
 
 4
 But where the claimant presented before the board, besides the original title, evidences of derivative title, it has been held that the commissioners decided upon both, and that the confirmation operated as a grant to the claimant, although his name was omitted in the form of confirmation. This was expressly ruled in Bissell v. Penrose.[10] The claim there was confirmed to Benito, Antoine, Hypolite, Joseph, and Pierre Vasquez, or their legal representatives, according to the concession. Rudolph Tillier presented the claim for confirmation and produced the concession, with written evidence of his title, which would appear to have been imperfect. It was argued there, as here, that the act of 1836 confirms only the Spanish concession in the abstract, but the court held otherwise, and decided that the title was confirmed to Tillier, the assignee, as claimant. Besides the general reasoning on which this opinion is based, the decision in Strother v. Lucas,[11] and the usages of the land office are cited in support of it.
 
 
 5
 Shortly after the decision in Bissell v. Penrose, the case of Boone v. Moore[12] arose in Missouri. The confirmation in that case was to David Cole, or his legal representatives. The claim was filed by Jesse Richardson, who produced before the old board his derivative title-papers. The Supreme Court of Missouri held that the confirmation was to Richardson, and not to the legal representatives of Cole, on the authority of Bissell v. Penrose, and this, too, while evidently doubting the propriety of that decision. The same point was again presented to the Supreme Court of Missouri in Carpenter v. Rannells,[13] with the same result. The record in that case shows that James Bankson, as assignee of John Butler, under an executory contract, claimed the land, and produced to the board the evidence upon which a confirmation was granted. The judgment of confirmation, however, was to John Butler or his legal representatives, but the court held, on the authority of Bissell v. Penrose and Boone v. Moore, that the legal effect of this confirmation was to vest the title in Bankson. The principles in this case are examined and adhered to in the case of the present plaintiffs against Labeaume's heirs, reported in 45 Missouri, 139.
 
 
 6
 The case of Carpenter v. Rannells[14] was brought to this court, and it was held, substantially, that Bankson, having presented the claim and filed his paper title with it, the confirmation inured to him, and that no other representative of Butler, whether hereditary or by contract, had any right, legal or equitable, to the premises in controversy.
 
 
 7
 It would seem that these cases should be decisive of the question at issue. Instead of this the plaintiffs seek to overturn the authority of Bissell v. Penrose, on which all the cases rest. It is too late to question the soundness of that decision. To permit it to be done now would not only unsettle titles to which this decision is applicable, but weaken confidence in all titles in Missouri growing out of Spanish concessions. There can be no hardship in applying the doctrine of Bissell v. Penrose to the facts of this case. After the lapse of more than sixty years Leabeaume's title is disputed in behalf of persons who never appeared before the commissioners with any claim of their own. In that early day there must have been great ignorance among the people of the forms of legal papers. And this fact was, doubtless, considered by the commissioners in reaching the conclusion which they did. They treated the papers of Labeaume as a transfer to him of all the interest that the heirs of Dodier had in the premises, and having the power to adjudicate the title to the claimant on such papers as he presented, their decision, having been confirmed by Congress, whether right or wrong, is final.
 
 
 8
 An attempt was made in this case to show that the persons from whom the plaintiffs seek to deduce their title were claimants before the board of commissioners, but this attempt wholly failed.[15] It is unnecessary to discuss the piece of evidence introduced for this purpose, for the Supreme Court of Missouri in their opinion have said all that can be said on the subject.[16]
 
 
 9
 JUDGMENT AFFIRMED.
 
 
 
 [1]
 2 Stat. at Large, 326.
 
 
 [2]
 2 stat. at Large, 391.
 
 
 [3]
 4 Stat. at Large, pp. 565-661.
 
 
 [4]
 8 Howard, 317.
 
 
 [5]
 See 2 Land Claims, pp. 563-603; 3 Id. pp. 275-317; Report of Board of 1832-3, 5 Land Claims; see list of certificates, Nos. 6, 89, 90, 92, 110, 157, 169, 185, 199, 207, 215, 225, 256, 267, 270, 275, 280, 284, 285, 298, 321, 358, 394, 402, 439, 440, 448, 514, 523, 543, 576, 606, 625, 628, 648, 649, 650, 651, 661, 672, 694, 717, 721, 731, 742, 764, 770, 793, 827, 897, 918—legal representatives of Gab. Dodier, Sr.—942, 943, 953, 968, 979, 1015, 1023, 1123, 1127, 1158, 1159, 1194, 1217, 1218, 1230, 1270, 1272, 1288, 1290, 1291, 1299, 1301, 1303, 1304. Nos. 942 and 943 were the lots in controversy in the suit of Strother v. Lucas, 12 Peters, 410.
 
 
 [6]
 8 Howard, 317.
 
 
 [7]
 12 Peters, 410.
 
 
 [8]
 2 Wallace, 605.
 
 
 [9]
 22 Missouri, 55; Same Case, 32 Id. 68, and on error, 2 Wallace, 605.
 
 
 [10]
 8 Howard, 317.
 
 
 [11]
 6 Peters, 772; 12 Id. 458.
 
 
 [12]
 14 Missouri, 420.
 
 
 [13]
 45 Id. 584.
 
 
 [14]
 19 Wallace, 138.
 
 
 [15]
 See Statement, supra, p. 264.
 
 
 [16]
 Connoyer v. Schaeffer, 48 Missouri, 166.