Bradley and others vs. Dells Lumber Co.

BRADLEY and others, Appellants, vs. DELLS LUMBER COMPANY, Respondent.

*December 16, 1899 — January 9, 1900.*

*Government land: Patents: Certificate of location: Jurisdiction of surveyor general: Collateral attack: Comity: "Legal representatives:" Evidence: Alteration of written instruments: New trial.*

1. In an action wherein plaintiffs' title to certain real estate depended on a patent, issued on a certificate of location in favor of G. or his legal representatives indorsed by the surveyor general of the district of Louisiana that from evidence filed in his office D. was such representative, it appeared from the record of the proper parish court of Louisiana that, G. having died, the land claim in question had been inventoried, appraised, duly sold to D., and the sale confirmed by the judgment of the court. *Held,* that defendant, without in some way connecting itself with the descendants of G., could not attack plaintiffs' title for fraud in the ancillary proceedings leading up to the issue of the patent by the government.

2. Under act of Congress approved June 2, 1858, it was the duty of the surveyor general of the district, upon satisfactory proof that the claim had been confirmed and was unsatisfied, to issue to the claimant or his legal representatives a certificate of location. Being authorized by the statute to issue the certificate to the claimant's representatives, he was clothed with power to ascertain and determine who such representatives were, and having made it pursuant to authority of law, his determination is *prima facie* evidence of the fact.

3. The test in such cases is whether the officer had power to enter upon the inquiry, not whether his conclusion in the course of it was

Bradley and others vs. Dells Lumber Co.

right; and the power having been exercised in a proper case it is not open to collateral attack.

4. The courts of this state are bound to give full faith and credit to the judicial proceedings of the parish courts of Louisiana in succession proceedings.

5. The term "legal representatives" as used in the patent in question embraces a representative by contract, a grantee or assignee, as well as a representative by operation of law.

6. When the bare inspection of a written instrument reveals the fact that it has been altered in the respect claimed, by a different hand, it is error to receive it in evidence until such alteration is explained.

7. On motion for a new trial in an action for unlawfully cutting and removing timber. the facts that plaintiffs' counsel had been given to understand that title to the land in question would be conceded on the trial, and that a tender of judgment had been made,— in connection with the personal assurances of defendant's officers that its claim of title had been abandoned, the indefinite way in which such claim was set up in its answer, and the failure to make timely rulings on the reception of evidence,— presented a case in which a new trial should have been granted.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

The complaint in this action alleges that the plaintiffs were the owners of certain lands (describing four forties), and that on October 1, 1893, and at other times thereafter, the defendant unlawfully entered thereon, cut and removed timber therefrom, and manufactured the same into lumber, to plaintiffs' damage $15,000. The answer admits that plaintiffs were the owners of all of the lands described except one forty, described as S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, sec. 15, T. 42, R. 7. Denies wilful cutting. Admits entry on the land last described, and cutting 400,000 feet. Claims entry was in good faith, in the honest belief that it was the owner thereof under mesne conveyances from Henry W. Early and others, who made a cash entry of the same at the United States land office at Stevens Point, Wisconsin, on August 9, 1872. Sets out the receiver's duplicate receipt in full. Admits that its contractor cut a few trees over the line on one forty, and some timber on another, in making a road, without its

knowledge or consent. The defendant made a tender of judgment for the cutting done on the S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, sec. 15 (being the forty which it is claimed was included in the receiver's receipt) of $1,052.83, and for the cutting on the other land it tendered judgment for $40 besides costs. The tender was refused. The chief controversy on the trial was over the title to the S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, sec. 15.

To establish title on the part of plaintiffs, they introduced in evidence a patent from the United States dated May 1, 1875, which recited: — certain provisions of an act of Congress approved June 2, 1858, entitled "An act to provide for the location of certain confirmed private land claims in the state of Missouri, and for other purposes;" that in conformity to said act the surveyor general of the United States for the state of Louisiana issued his certificate of location in full satisfaction of the unlocated and unsatisfied claim of James Goyne, entered in the report of James O. Cosby, and confirmed by act of Congress approved March 3, 1819; and that it appeared that such certificate had been deposited in the land office at Wausau, Wisconsin, and had been located on the land described, in part satisfaction of the claim of said James Goyne,— whereupon "the United States of America, in consideration of the premises, and in conformity with the aforesaid act of Congress of June 2, 1858, have given and granted, and by these presents do give and grant, unto the said James Goyne or his legal representatives the tract of land above described; to have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature belonging, unto the said James Goyne or his legal representatives, and to his or their heirs and assigns, forever." The plaintiffs further offered in evidence a certified copy of the original certificate of location, dated June 29, 1872, signed by the surveyor general, with a certificate of the acting commissioner of the general land office that it was receivable at any of the land

Bradley and others vs. Dells Lumber Co.

offices of the United States except in certain states named, and that the patent, when issued, should be in the name of James Goyne or his legal representatives.   On the back of the certificate of location was the following certificate:

"Office of the Surveyor General, District of Louisiana. New Orleans, August 31st, June 29th, 1872.   I certify that, from the evidence filed in this office, W. T. Dugan is the legal representative of James Goyne, and as such is entitled to recover on this scrip.          E. W. Foster,
                         "Surveyor General, Louisiana."

In addition, the plaintiffs offered a transcript of the proceedings and record of the parish court of the parish of St. Helena, Louisiana, in the matter of the succession of James Goyne, deceased, from which it appeared that the land claim of Goyne was inventoried, appraised, and duly sold to W. T. Dugan, and duly confirmed by the judgment of the court.   Plaintiffs then traced title to themselves from Dugan by mesne conveyances.

In support of its claim defendant offered the receiver's duplicate receipt before referred to, which was objected to on the ground that it appeared on its face to have been altered.   After some discussion, ruling was reserved, and defendant offered proof that its grantors had paid taxes on the land for a number of years, commencing with 1873. Later in the proceedings the court announced that the receipt would be received in evidence on the question of defendant's good faith in entering upon the land, and that he would reserve a ruling on its admission, as bearing on the question of title.   No formal ruling on that question, however, was ever made.

After considerable evidence had been offered on the subject of the cutting and the value of the timber, the court submitted a special verdict to the jury, who found substantially as follows: (1) That the timber cut and removed from the S. W. ¼ of N. E. ¼, sec. 15, was 500,000 feet.   (2) That

the value of the timber as it stood on the land was $2 per thousand. (3) That the highest market price for the logs at any time while they were in the possession of the defendant was $4 per thousand. (4) That defendant acquired title, and entered on said forty, believing such title to be valid. (5) That defendant cut 24,000 feet of timber on the other lands. (6) That the value of such timber on the land was $48. (No question No. 7.) (8) That the plaintiffs were the owners of said timber. (Answered by stipulation.) (9) That the plaintiffs at the time of the cutting, and since, were the owners of the logs and lumber cut on the S. W. ¼ of N. E. ¼, sec. 15. This question was answered in the affirmative by direction of the court, subject to his opinion on the question of title reserved. (10) That the said receiver's receipt was in the same condition with respect to alteration as when it was delivered to the parties therein named by the receiver of the land office.

Upon the coming in of the verdict, plaintiffs made a motion, upon the minutes of the court and upon the affidavits of plaintiffs' counsel and John J. Jenkins, to strike out question 10 and its answer, or to set aside the answer and make a negative one, and to give judgment for the plaintiffs notwithstanding said answer, because it was against the evidence, or to grant a new trial on the ground of newly discovered evidence, inadvertence, and excusable neglect, as set forth in the affidavits. This motion was denied. The affidavit of Jenkins was to the effect that he had examined the original papers on file in the general land office at Washington, and that the disputed forty was not described in the receiver's receipt or register's certificate. Mr. James's affidavit sets out that he had been given to understand by the officers of defendant that they had no title to the land in question, and that the actual title would be conceded in plaintiffs at the trial. He then set out certain facts tending to excuse the nonproduction of the records of the land

office at the time.   He attached to his affidavit a copy of
the original application to enter the land covered by the
receiver's receipt offered in evidence, in which the tract
covering the land in question was described as the N. ½ of
the N. E. ¼ instead of the W. ½ of the N. E. ¼ of section 15,
and did not include the disputed forty.

After the denial of the motion for a new trial the court
made findings of fact, in which he set out many of the facts
hereinbefore stated, including the facts found by the jury
and the facts as to the proceedings in the parish court of
Louisiana; and therefrom he concluded, as a matter of law,
that W. T. Dugan did not become entitled to any part of the
estate of James Goyne, and was not shown to be his legal
representative by virtue of the proceedings in said parish
court, and that plaintiffs had no title to said forties; that
defendant is the owner of said land by virtue of the receiv-
er's receipt before mentioned; that the answer to question 9
should be changed to the negative; that the plaintiffs were
the owners of the other lands described, and entitled to judg-
ment for the value of the timber cut thereon; and judgment
for plaintiffs for $62.40 was ordered.   Exceptions to the
finding were taken, and from the judgment so entered the
plaintiffs take this appeal.

*V. W. James*, for the appellants.

*W. F. Bailey*, for the respondent.

BARDEEN, J.   In so far as the plaintiffs' title depends upon
the certificate of location, and the record and proceedings
in the parish court of Louisiana in the matter of the succes-
sion of James Goyne, it differs in no material respect from
that had under consideration in the case of *Simmons v. Saul*,
138 U. S. 439.   That case, however, was a direct proceeding
by the legal descendants of the holder of the inchoate land
claim, against the holder of the title to land entered upon a
sale of the scrip under succession proceedings, to set aside

such proceedings and to charge the holder of the title as trustee. In this case the defendant seeks to challenge the plaintiffs' title without in any way connecting itself with the descendants of Goyne. If its title under the receiver's receipt fails, the proposition is too clear for discussion that the defendant cannot attack the plaintiffs' title for fraud in the ancillary proceedings leading up to the issue of the patent from the government. The rule is well established that when the United States have transferred public lands by patent the legal title passes to the patentee named in the patent, although he may have obtained it by fraud or forgery. "The patent conveys the legal title to the patentee, and cannot be revoked or set aside, except upon judicial proceedings instituted in behalf of the United States." *In re Emblen*, 161 U. S. 52, and cases cited. In the case at bar counsel for defendant has attacked the proceedings of the parish court of Louisiana, through which the plaintiffs claim title, on the ground that the court was without jurisdiction, and that the whole proceeding was fraudulent and void as against the descendants of James Goyne. If it be admitted that the defendant is in position to avail itself of this defense, still every question he has raised in that respect was most strenuously urged in *Simmons v. Saul*, 138 U. S. 439, and decided adversely to such contention. Nothing that we can say will add to the force or weight of that decision. It goes over the ground fully, and, covering as it does the question of the faith and credit which courts of other states are bound to give to the judicial proceedings of the parish courts of Louisiana in succession proceedings, we feel bound to follow it. The case of *Weeks v. M., L. S. & W. R. Co.* 78 Wis. 501, was decided prior to the announcement of the decision in *Simmons v. Saul*, 138 U. S. 439, and in so far as it runs counter to the rules established in that case it must yield.

Here the plaintiffs offered proof of a patent from the United States to "James Goyne or his legal representatives;" also,

a certificate of location, viseed by the acting commissioner of the general land office, upon which was noted the certificate of the surveyor general of Louisiana that, from the evidence filed in his office, W. T. Dugan, the person through whom plaintiffs claimed, was the legal representative of James Goyne. This evidence of itself made at least a *prima facie* showing of title in the plaintiffs. The third section of the act of Congress approved June 2, 1858, made it the duty of the surveyor general of the district in which the land claim was located, upon satisfactory proof that such claim had been confirmed and was unsatisfied, to issue to the "claimant *or* his legal representatives" a certificate of location for a quantity of land equal to that so confirmed and unsatisfied. If the surveyor general may issue the certificate of location to the claimant's legal representatives, as the act provides, certainly he was clothed with power to ascertain and determine who such representatives were. He could not fulfill the requirements of the law unless he made such determination, and, having so made it pursuant to authority of law, it was at least *prima facie* evidence of the fact. The power was incident to the duty to be performed, and having been exercised in a proper case, it may well be claimed that it was impervious to collateral attack. The test in such cases is whether the officer had power to enter upon the inquiry, not whether his conclusion in the course of it was right. The following cases bearing upon this question may be consulted with profit: *New Dunderberg M. Co. v. Old,* 25 C. C. A. 116; *U. S. v. W. & St. P. R. Co.* 67 Fed. Rep. 948; *Beard v. Federy,* 3 Wall. 478; *U. S. v. Arredondo,* 6 Pet. 691-729; *Haydel v. Dufresne,* 17 How. 26; *Chouteau's Heirs v. U. S.* 9 Pet. 147; *Lee v. Johnson,* 116 U. S. 48; *Burgess v. Gray,* 16 How. 48; *Connoyer v. Schaeffer,* 22 Wall. 254.

The patent in this case runs to "James Goyne or his representatives," and the trial court held that it was not shown by the transcript of the proceedings in the parish court of

Louisiana or otherwise that W. T. Dugan was the "legal representative" of Goyne. If this conclusion was based upon the assumption that such proceedings did not show jurisdiction, then, as we have seen, such conclusion was contrary to *Simmons v. Saul*, 138 U. S. 439, and *Garrett v. Boeing*, 68 Fed. Rep. 51, and cannot stand. If his judgment was founded upon the suggestion that Dugan, as the purchaser at the probate sale, is not such "legal representative" as the law contemplates, his conclusion is equally infirm. "The term 'legal representative,' as used in the patent, embraces a representative by contract, a grantee or assignee, as well as a representative by operation of law." Copp, Pub. Land Laws (1875), 796; 2 Copp, Pub. Land Laws (1882), 1009; *Hogan v. Page*, 2 Wall. 607; *Carpenter v. Rannels*, 19 Wall. 138.

The plaintiffs having shown, both by the certificate of the surveyor general and the proceedings of the parish court, that Dugan was the "legal representative" of Goyne, their title to the land was absolute, for the purpose of this case, unless the defendant had a superior title under the receiver's receipt offered in evidence. When it was offered it was objected to because it appeared upon its face to have been altered, an "N" having apparently been changed to a "W." After some parleying between counsel and the court, it was admitted in so far as it bore on the question of defendant's good faith in acquiring title and cutting the timber, but the court reserved a ruling as to its bearing on the question of title. Without making any further ruling in that respect, the court submitted to the jury, against plaintiffs' objection, a question whether the receipt was in the same condition with respect to alteration as when it was delivered to the parties named therein by the receiver of the land office. The plaintiffs requested the court to instruct the jury to answer the question, "No," which was denied. The jury answered the question in the affirmative. By stipulation of

the parties the question of the title was reserved to be de-
cided by the court.     After the verdict of the jury the plaint-
iffs made a seasonable motion for a new trial, stating the
grounds as will more fully appear in the statement of the
case.     This motion was denied, and the court thereupon
made findings and conclusions that plaintiffs had no title,
and defendant was the owner of the forty in dispute.     Under
the proof in the case, we think the court was clearly in error.
A bare inspection of the receipt reveals the fact that it had
been altered in the respect claimed by a different hand from
that which wrote the body of the receipt.     This alteration
becomes much more glaring by inspection under a glass.
The recent case of *Maldaner v. Smith*, 102 Wis. 30, reviews
the authorities upon the question of interlineations and al-
terations of written instruments so fully that we need do
no more than refer to it to ascertain the rule prevalent in
this state.     It is there stated in effect that the mere fact of
an alteration or interlineation in an instrument would not
call for explanation, if the appearance of the writing and
the ink are such as to indicate that the whole was written
at the same time and by the same hand.     But if the circum-
stances are such as to point to a change or alteration in a
different hand or in different ink, and that it must have
been done after delivery, the rule is cogent that before it
can be received in evidence such alteration must be explained.
The alteration in the receipt in question is so palpably dif-
ferent from the other writing therein as to throw suspicion
on its genuineness and to call for some explanation.     This,
was not furnished.     The only evidence at all bearing upon
that question was that of Mr. Bailey, who said that at some
indefinite time after its issue it came to his hands, and was
now in the same condition as when he received it.     What-
ever doubts there may be as to the fact of alteration are
resolved to a certainty by the affidavits used on the motion
for a new trial.     Under the law of the United States, per-

sons desiring to purchase land at private sale must make a written application, describing the tract sought to be purchased, to be filed by the land officers. A certified copy of the application made by the persons to whom the receipt was issued shows that they applied to enter the N. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section 15, instead of the W. $\frac{1}{2}$; and the duplicate receipt on file in the land office at Washington shows the same thing. But one conclusion is possible, and that is that the receipt must have been changed after delivery. The receipt on its face showing such evidence of alteration as to call for explanation, the court ought not to have considered it on the question of title, without it.

Moreover, the court, under the circumstances, ought to have granted a new trial. The fact is undisputed that plaintiffs' counsel was given to understand that the actual title to this land in plaintiffs would be conceded on the trial. The defendant made a tender of judgment for the cutting done on this forty. Under date of January 3, 1896, the plaintiffs wrote the defendant as follows: "We understand from Mr. V. W. James that you have given up the contest on the title to the land, viz. the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, Sec. 15, T. 42, 7 E., about which we have been so long writing you." To this the defendant answered: "Replying to your favor of the 3rd inst., will say we have a warranty deed of the land in question, though, as explained to us by Mr. James, we expect your title will hold good, and there is nothing for us to do but settle amicably with you, which we wish to do, and then take claims on our grantors for reimbursement." This, in connection with personal assurances from the officers of defendant that they had abandoned their claim to title, and the rather indefinite way in which their claim of title is set up in the answer, evidently threw the plaintiffs' counsel off his guard. Add to this the tender of judgment, and the failure of the court to make a timely ruling on the reception of the receipt in evidence without lim-

itation, and we think a case was presented where the court ought to have given the plaintiffs an opportunity to furnish proof as to the facts disclosed by the records of the land office. If the facts are as disclosed in the affidavits, the conclusion seems beyond question that defendant obtained no title under its receipt.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

