Maldaner vs. Smith and others.

MALDANER, Appellant, vs. SMITH and others, Respondents.

*January 12 — January 31, 1899.*

(1, 2) *Bills and notes: Interlineations: Presumptions as to fraud.* (3-5) *Transactions with person since deceased: Witnesses: Removal of incompetency: Depositions.*

1. The mere existence of an interlineation in a note raises no presumption of a fraudulent or unauthorized alteration. In the absence of some indication other than the interlineation itself, the presumption is that it was made before delivery of the paper.

2. Where an interlineation in a note exists, but the instrument appears to have been written all at the same time, by the same hand and with the same ink, the presumptions are against a forgery, and in the absence of clear and satisfactory evidence to the contrary such presumptions should prevail.

3. The incompetency of a party under sec. 4070, R. S. 1878, to testify as to personal transactions between himself and one whom he claims to have been the agent of the adverse party, is not removable by the examination of such party otherwise than as a witness at the instance of such adverse party and the introduction of such examination in evidence by such party in his own behalf.

4. The incompetency of a party to testify under sec. 4070, R. S. 1878, is removable only by the conduct of the adverse party in the manner indicated in such section. The door for such party to testify is closed by the statute against any effort of his to open it. The adverse party must open the door, if opened at all.

5. The mere taking of a deposition does not make it evidence for either party. Though it may be offered by either, when offered it is the evidence of the party offering it, regardless of at whose instance it was taken.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Reversed.*

Action to foreclose a mortgage given to secure the payment of a note of $2,000 and the interest thereon. Defendant *George W. Smith* was the mortgagor and W. T. Rambusch the payee. Plaintiff became the owner of the note and mortgage for value before maturity, the title having been

duly transferred by indorsement of the note and delivery of the same, with a proper assignment of the mortgage. The property passed first to Henry Maldaner. He subsequently died, and his executors transferred the property to the plaintiff. The note was in form negotiable, but the words "or order," at the proper place, were interlined, though there was nothing in the appearance of the note indicating that the interlineation was not made at the time it was signed or delivered to Rambusch.

The complaint was in due and legal form. The maker of the note and his wife, *Addie E. Smith*, answered the complaint, admitting under oath the execution of the note, setting it out *verbatim* as it appeared when introduced in evidence in the case. At the opening of the trial the answer was amended so as to deny the execution of the note described in the complaint, but admit the execution of one similar in all respects, except as to the words "or order." The effect of the answer was to deny the execution of a negotiable note. The answer further alleged that Rambusch was the agent of the owner of the note and mortgage up to the time it was fully paid, and that such payment was made to such agent without notice that he was not the owner of the note. The questions litigated were whether the note was negotiable when delivered to Rambusch, whether it was thereafter changed by interlining the words "or order," and whether Rambusch received payments on the note from the maker, as agent for the owner. No payments were made except those admitted in the complaint, other than payments claimed to have been made to Rambusch as agent, which never reached the owner of the note and mortgage.

When the note was offered in evidence the court ruled as a matter of law that it was incumbent on the plaintiff to satisfactorily explain by evidence *aliunde* the interlineation of the words "or order," though there was nothing appearing on the face of the paper to cast suspicion upon it except

the fact of the interlineation. It appeared to be all in the same handwriting and to have all been written at the same time, with the same ink. It was received in evidence upon the original answer being offered in evidence.

The examination of *George W. Smith* at the instance of plaintiff, otherwise than as a witness under the statute, was received in evidence against objection. Such objection was particularly directed to that part of the examination relating to transactions between *Smith* and Rambusch, the latter having died before the trial. Upon the theory that the examination of *Smith* otherwise than as a witness, and its reception in evidence in his behalf, removed his incompetency to testify as to transactions between himself and the deceased Rambusch, he was permitted against objection to give such testimony, which included a relation of the making of various payments to the deceased, including the final payment, and of obtaining receipts therefor, and of the final surrender to *Smith* of what purported to be the note, but which was, in fact, a copy, with a portion torn out where the words "or order" occur in the original. The mortgage was not surrendered at the time the final payment was made, and no inquiry for the same was made, *Smith* being satisfied with the statement of Rambusch that he had destroyed the mortgage and satisfied it of record. There was no proof of payments other than those admitted in the complaint, except by the testimony of *Smith*, as before indicated.

*Smith* testified that the words "or order" were not in the note when he signed it; that he then knew the significance of such words; that it was the first note he ever gave and he remembered that when he signed it he thought the omission of such words would prevent Rambusch from selling the note; that all payments were made to Rambusch without any demand being made therefor. He explained the circumstance of his signing the answer admitting the execution of the note with the words "or order" in it, by

saying that he was hurried up and did not read the answer carefully. *Charles H. Smith*, a brother of the defendant *George*, corroborated the latter as to there being no interlineation in the note when it was executed. He said he had no object but that of curiosity in examining the note, and that nothing had occurred since its execution to call the subject to his attention; that when the note was made he had not the slightest interest in knowing the form of the note, or in remembering it.

The court found that the instrument was nonnegotiable when delivered to Rambusch; that the words "or order" were interlined therein without the knowledge or consent of the maker, after such delivery; that it was fully paid to Rambusch according to its terms before the action was commenced, and without notice on the part of the maker of its transfer to a third person. As a conclusion of law the court found that both the note and mortgage were void and that defendants were entitled to judgment. Judgment was entered accordingly, and plaintiff appealed, proper exceptions to the findings of fact having been filed to preserve for review the questions discussed and decided in the opinion.

For the appellant there was a brief by *Quarles, Spence & Quarles* and *George Lines*, and oral argument by *Mr. Lines*.

For the respondents there was a brief by *Malone & Bachhuber*, and oral argument by *J. E. Malone*.

MARSHALL, J. The most important question for consideration on this appeal is, Did the court err in finding that the words "or order" were interlined in the note after its delivery to Rambusch, and without the knowledge or consent of the maker? That being a question of fact, the determination of it by the trial court cannot be disturbed unless contrary to the clear preponderance of the evidence; but in reaching a conclusion, some rules which are well settled

must be taken into consideration.   First, is the rule that he who alleges fraud must establish it by clear and satisfactory evidence.   Only reasonable certainty of the existence of the fact is required, the same as in case of any other fact in a civil action.   Nevertheless the presumption of innocence and fair dealing among men is so persuasive that a situation which violates it calls for evidence of a more clear and satisfactory character than one that does not involve moral turpitude or the commission of a criminal offense.   Consistent with that idea, the rule is well recognized that where fraud, whether constituting a criminal offense or not, is alleged as the foundation of the action, but especially in case of the former, it must be established by clear and satisfactory evidence or there can be no recovery.   The more serious the nature of the fraud charged, the more rigidly should that rule be applied.   That is particularly applicable to the case before us, the charge of fraud involving the offense of forgery, a felonious crime under the statutes of this state.

Second, is the rule that the mere fact that a note has a material interlineation raises no presumption that it was changed after delivery.   In this the learned trial judge made a serious mistake.   It is not the law that the mere existence of an interlineation in a writing raises a presumption that it has been fraudulently altered or altered at all since delivery. The presumption of honesty is by no means so easily overcome as that, and the burden of proof put upon the person claiming under such a paper to remove a suspicion of fraud cast upon it.   That we deem to be so elementary that a citation of authority to sustain it is hardly necessary.   It has often been so held by this court, as shown by numerous instances cited by appellant's counsel, to which others might be added.   *Williams v. Starr*, 5 Wis. 534; *Page v. Danaher*, 43 Wis. 221; *Gorden v. Robertson*, 48 Wis. 493; *Maxwell v. Hartmann*, 50 Wis. 660; *Rollins v. Humphrey*, 98 Wis. 66; *Prieger v. Exchange Mut. Ins. Co.* 6 Wis. 89; *Austin v. Aus-*

*tin,* 45 Wis. 523. Mr. Jones, in his late work on Evidence, after an exhaustive examination of authorities, as indicated in his notes, lays down the rule as established by the great weight of them that: "The mere fact that there is an interlineation or alteration does not, it would seem, call for an explanation, provided the appearance of the writing and ink is such as to indicate that the whole was written at the same time and by the same hand. In such a case it is clear that the usual presumption in favor of innocence and against wrong doing will obtain and the burden will rest upon the person asserting that a wrongful alteration has been made to establish it." Jones, Ev. § 578.

The learned counsel for respondents cite *Schwalm v. Mc-Intyre,* 17 Wis. 233, to the contrary, but the court there did not pass on the question at all. It was said, in substance, that whether a written contract offered in evidence, having a material alteration, should be rejected because of a legal presumption that the alteration was made before delivery, is not decided. Counsel also cite *Page v. Danaher, supra,* and that appears to be what the learned trial judge relied upon, as in making the ruling he referred to what Mr. Justice COLE there said, overlooking the fact that the change in the note then under consideration was made with a different colored ink and had the appearance of having been made some time after the execution of the instrument. It was to such a paper that the language of the court was directed in saying, "Under these circumstances we think the plaintiffs were bound to give some evidence to account for the alteration," and that it would warrant the inference or conclusion that the alteration was made after the instrument became operative. The following rule by Greenleaf was adopted in that case: "If, on the production of the instrument, it appears to have been altered, it is incumbent on the party offering it in evidence to explain its appearance." The words "appears to have been altered" do not go so far as to include

a mere alteration having all the appearance of having been made before the paper was finally completed. They mean altered after delivery. In the absence of any indication that paper has been altered since its completion, execution, and delivery, it is free from suspicion notwithstanding there may be an interlineation in it. If such interlineation be neither in a different handwriting, made with a different colored ink, nor have any circumstance of suspicion indicative of an alteration subsequent to the completion of the paper, other than the mere fact of the existence of the interlineation, the latter circumstance will cast no suspicion upon it. Such, in substance, was the language of the present chief justice, speaking for the court in *Maxwell v. Hartmann*, 50 Wis. 660. For further authorities on the subject, see 1 Greenl. Ev. § 564; *Stoner v. Ellis*, 6 Ind. 152; *Gooch v. Bryant*, 13 Me. 386; *Farnsworth v. Sharp*, 4 Sneed, 55; *Sayre v. Reynolds*, 5 N. J. Law, 737; *Sedgwick v. Sedgwick*, 56 Cal. 213; *Smith v. Ferry*, 69 Mo. 142; *Dodge v. Haskell*, 69 Me. 429; *Odell v. Gallup*, 62 Iowa, 253; *Kleeb v. Bard*, 12 Wash. 140; *Farmers' L. & T. Co. v. Olson*, 92 Iowa, 770; *Sneed v. Sabinal M. & M. Co.* 73 Fed. Rep. 925; *Dorsey v. Conrad*, 49 Neb. 443; *Cosgrove v. Fanebust*, 10 S. Dak. 213.

In *Sayre v. Reynolds, supra*, it is said, in effect, there being nothing in the writing itself to indicate that the alteration was made after delivery, all probabilities are against the theory of forgery. And in *Wilson v. Hayes*, 40 Minn. 531, it is said that, "the signature of a note being admitted, an alteration not having any suspicious appearance is presumed to have been made before delivery." "Proof of the signature of the note *prima facie* establishes the fact that the alteration was made before execution and delivery, and casts upon the person claiming the contrary the burden of establishing his contention." Such is the law by the great weight of authority and according to previous adjudications of this court; though we recognize that there are

Maldaner vs. Smith and others.

authorities to the contrary, yet substantially all standard text writers state the doctrine as before indicated.

We are urged by counsel for respondent to disregard the finding of the trial court as to the note having been altered after delivery, because of his erroneous view of the law. That we cannot do. It does not change the rule that the finding of the trial court on a question of fact cannot be disturbed unless against the clear preponderance of the evidence. Nevertheless the application of correct rules of law to the evidence in place of incorrect rules must necessarily have the full weight naturally resulting from such a change in the situation, in determining whether the finding is sustained by the evidence or not.

In the light of what has preceded, the situation on one side of the controversy is as follows: The mere interlineation in the note raises no presumption of a fraudulent alteration. The note itself furnishes no evidence casting suspicion upon it. It appears to have been all written by the same hand, with the same ink, at the same time. It is in the form generally adopted among business men. The probabilities are all against the taking of a nonnegotiable note, especially as it appears that it was taken in contemplation of being immediately transferred by Rambusch. The transfer occurred four days after the papers were executed. Not only is there nothing on the face of the note indicating a fraudulent alteration, but the legal presumption of innocence and all the probabilities are against it. In addition to that the maker of the note seasonably answered in this action under oath, admitting the execution of the note in the form it appeared when offered in evidence. He rested on that admission for a period of about eight months and until after he had an opportunity, when examined otherwise than as a witness, to see the original note with the interlineation therein. It is fair to conclude that it did not occur to him to amend his answer till after he saw the note at the time

indicated.   The amendment was not made until the cause
was called for trial about eight months after the original
answer was interposed.   Opposed to that is the improbable
story of the maker of the note that he made the admission
in the first answer because he was hurried and did not read
it carefully; that the words "or order" were not in the
note when he signed it, and that he remembered the fact
because he did not want to give a note that could be sold.
To that is added the improbable story of the maker's brother
that he saw the note when it was made, and though the
matter was not called to his attention again for nine years,
and he had not the slightest interest in the matter, he re-
membered that there was no interlineation in it; that it was
nonnegotiable in form.   In that state of the record no other
conclusion can be reached than that the finding of the learned
trial court as to the interlineation being made after the note
was delivered to Rambusch is against the clear and decided
preponderance of the evidence.   That situation is so clear
that there is no reasonable explanation of the decision ap-
pealed from, other than that the erroneous idea of the law
expressed by the court, that the existence of the interlinea-
tion raises a presumption that it was made after delivery,
had great weight in the judicial mind and turned the scales
against the plaintiff.

The next question that is presented is, Was the evidence
given by *Smith*, as to his personal transactions with Ram-
busch, admissible ?   If not, there is no evidence whatever in
the record of any payments other than those admitted by
plaintiff, even if it be conceded that Rambusch was the agent
of the owner.   The court made no finding on that subject,
and there is no exception by the respondent because of such
failure to find, so that question is not before us in any form.
But if Rambusch was not the agent of the holder of the note,
then the transactions between him and *Smith* were entirely
immaterial and should have been excluded on appellant's

objection on that ground.  If he was such agent, then the
evidence of *Smith* should have been excluded under sec. 4070,
R. S. 1878, unless his incompetency was removed in the man-
ner therein indicated.  The section provides that no party
circumstanced as *Smith* was shall be examined as a witness
in respect to any transaction or communication by him per-
sonally with a person circumstanced as respondent claimed
Rambusch was, unless the opposite party, or some other wit-
ness, shall be first examined in his behalf, in respect to some
transaction or communication between the deceased agent
and such opposite party, or the evidence of the agent as to
the transactions be first read or given in evidence.  So it is
clear that the incompetency of *Smith* could only have been
removed in one of two ways: First, by evidence on the trial
by or on behalf of the opposite party in respect to the trans-
actions with the deceased agent; or, second, by the giving
in evidence of an examination of the agent himself taken on
some occasion before his death.  To meet the requirements
of the statute, respondent's counsel offered in evidence the
examination of *Smith* taken otherwise than as a witness.
That is, instead of waiting, as the statute contemplates, for
the opposite party to open the door for the admission in evi-
dence of the otherwise incompetent testimony, respondent
claimed the right to open it by offering in his own behalf
his own evidence, taken otherwise than as a witness, an ex-
ceedingly novel proceeding, clearly a violation of the very
letter of the statute.  It would seem that it could hardly be
seriously contended that the proceeding was proper.  The
mere fact that *Smith* was examined otherwise than as a wit-
ness, so long as plaintiff did not offer such examination in
evidence, did not open the door for *Smith* to testify on the
trial.  The foundation for the examination of a party as to
transactions with a deceased agent must be laid by the oppo-
site party.  Here the trial court reversed the rule of the
statute, overlooking, obviously, the elementary principle that

a deposition or examination taken out of court does not become evidence for a party taking it, or any party to the cause, till offered and received as evidence, and that it is then evidence only for the party who offers it.   In all cases where a party offers in evidence a deposition taken by the opposite party, he makes it his own evidence; the latter can then object to his own interrogatories therein, the same as if propounded by the former, and can object to the competency of the witness the same as if the deposition were taken for his adversary.   Jones, Ev. § 703.   The use of a deposition by one party, taken by the other, gives it no different status in the case than the evidence of a party, or of a witness called into court in his behalf, when called to the stand by his opponent.   *Hazleton v. Union Bank*, 32 Wis. 34.

The singular and manifestly erroneous ruling under discussion, though contrary to the very letter of the statute and the settled practice as to the status of a deposition taken by one party when offered in evidence by his adversary, would appear at first glance to have some support in *Tomlinson v. Ellison*, 104 Mo. 105, and *Ess v. Griffith*, 139 Mo. 322.   The learned trial court may have been guided by those cases.   An examination of the Missouri statute, however, discloses that the incompetency of a party to testify to transactions with a deceased opposite party, or his agent, is not removable by any statutory method.   The statute merely says that the witness shall be incompetent to testify, the same as it provides that a physician or an attorney shall be incompetent to testify under certain circumstances.   The court held that the incompetency may be waived in the one case the same as in the other.   The decisions have no application to our statute, which provides how the incompetency of a witness shall be waived if at all.   The method provided by statute is exclusive.

So the conclusion reached is that the decision of the trial court as to the invalidity of the note, and as to payments

made thereon otherwise than those admitted by plaintiff, is contrary to the competent evidence in the case, and that disposes, adversely to the respondent, of all questions necessary to be considered on this appeal. It calls for a reversal of the judgment and for judgment in plaintiff's favor according to the prayer of the complaint when the case again reaches the trial court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in plaintiff's favor as prayed for in the complaint.

BARDEEN, J., took no part.