**TERRELL et al. v. STATE ex rel. JOHNSON, Co. Atty.**

No. 18922. Opinion Filed Dec. 18, 1928.

Wieck & Armstrong, D. E. Hodges, and H. C. Hargis, for plaintiffs in error.

W. Lee Johnson, Co. Atty., C. E. Mitchell, Asst. Co Atty., Edwards & Robinson, and Thurman S. Hurst, for defendants in error.

DIFFENDAFFER, C. This is an action to recover the sum of $25,000 on the supersedeas bond of Ray Terrell given to obtain his release from the penitentiary pending an appeal from a judgment and sentence against him in the district court of Pawnee county, Okla., wherein he was convicted of the crime of burglary with explosives, and sentenced to serve a term of 20 years in the penitentiary. The supersedeas bond was fixed in the trial court at $50,000, and after the petition in error and case-made were filed in the Criminal Court of Appeals, an order was made in that court for his release on bond in a sum fixed by that court at $25,000. This order was made on the 11th day of February, 1926. The appeal was thereafter dismissed, and upon failure of Ray Terrell to appear and submit to the judgment and sentence, the supersedeas bond was declared forfeited, and this action was brought to recover on the bond. The bond was filed with the Clerk of the Criminal Court of Appeals, and approved by him on the 11th day of February, 1926.

The petition is in the usual form and had attached thereto a certified copy of the bond and the justification or qualification of defendants Webb and Beal and other sureties on the bond. Defendants Webb and Beal filed separate verified amended answers identical in form, in which it was alleged:

"(1) That he denies the execution of the appeal bond, a copy of which is attached to plaintiff's petition and marked 'Exhibit B.'

"(2) For further answer and further defense to the petition of plaintiff herein, the said defendant states that the appeal bond herein sued on, a copy of which is attached to plaintiff's petition and marked 'Exhibit B' is and was subsequent to its execution and prior to the delivery and approval to and by the Clerk of the Criminal Court of Appeals of the state of Oklahoma, materially altered and changed, in that the principal of said bond was changed from $20,000 to $25,000 without the consent, knowledge or authorization of the said defendant, and contrary to his wishes and desires, and that the said defendant's first knowledge or information concerning said alteration, as aforesaid, was subsequent to the filing in the district court of Pawnee county, state of Oklahoma, the above-entitled action.

"(3) Said defendant further states on information and belief that said alteration was made either by Lona Smith, a co-obligor, or said bond was altered by an agent duly authorized by a co-obligor, on said bond.

"(4) Defendant further states that said alteration and change, as aforesaid, is apparent on the face of said bond and has been at all times since said change and alteration."

Plaintiff replied by general denial, and specifically denied any material alteration of the bond as alleged in defendants' answer, and further, in substance, that if the bond was changed from $20,000 to $25,000 by Lona Smith, one of the sureties, or by any agent of hers, such change was without

the knowledge or consent of the state of Oklahoma, or the clerk who accepted and approved the bond; and, further, if such change was made, it was made with the consent of the answering defendants; and, further, that if said bond was changed, the change was made by one Earl Smith, who was the agent of the answering defendants, and by them authorized to make any changes in said bond that might become necessary in order to get the bond approved by the court or its clerk to effect the release of Ray Terrell; and, further, that if the bond was changed, it was with the consent of the answering defendants; and further, that said bond was signed by the answering defendants for a valuable consideration, and by them entrusted to the care and keeping of Earl Smith with their consent and authority to present the same to and secure the approval thereof by the Criminal Court of Appeals or its clerk, to effect the release of Terrell, which was done, and that there was nothing appearing on the face of the bond to, or that did, cause the court or its clerk to believe that the bond had in any way been altered after it was signed by said defendants; that said Smith was an attorney of record in said case, and was clothed with apparent authority to secure the approval of said bond, and that the court or its clerk, believing the bond to be in the form as when signed by said defendants and relying thereon, did approve said bond and ordered the release of Terrell.

Defendants filed what they termed a replication to the reply in the nature of a general denial. Thereafter the cause was dismissed as to C. O. Johnson, administrator of the estate of Thomas K. Clark, one of the sureties on the bond. The issues as thus joined were tried to a jury resulting in a verdict for plaintiff in the sum of $25,000, upon which verdict judgment was rendered in said sum against defendants Webb and Beal, who after unsuccessful motion for new trial bring this appeal.

The parties will hereinafter be referred to in accord with their respective positions in the trial court.

The defendants contend that, when they signed the bond, the amount of the penalty was written at $20,000, and that after they signed it some one changed the bond by inserting the word "five" above and between the words "twenty" and "thousand," and inserting a caret between said words, and further, where the amount of the penalty was expressed in figures, the zero or "naught" immediately following the figure "2" has been changed, so as to make a five,

thus raising the amount of the penalty to $25,000 instead of $20,000.

Both defendants testified positively that they had seen the bond written by Mrs. Lona Smith, and that it read $20,000; that they and Lona Smith signed their names thereto, she signing first and they signing under her name, and that all three acknowledged their signatures before the same notary at the same time; that they left the bond with Smith and never saw it after that time and never consented to any change whatever, never authorized any person to change it, and never knew that it had been changed until after suit was filed; that they signed the bond in the office of Earl Smith in Ponca City, Okla., on the 4th day of February, 1926, and left the bond with Earl Smith. Another witness, W. N. Smith, who signed the bond as surety on February 10, 1926, testified positively that, when he signed it, the amount of the penalty was $20,000.

Plaintiff contends that the bond was not changed after these defendants signed it, and this is the principal controversy between the parties.

The evidence is positive, clear and uncontradicted, that the bond was not changed after it was submitted to and approved by W. M. Franklin, who was then Clerk of the Criminal Court of Appeals. It was presented to and approved by him February 11, 1926.

Lona Smith testified positively that she did not change the bond after it was signed by herself and defendants; that she did not remember the amount of the penalty of the bond at the time she signed it, but as far as she knew it was not changed after she signed it.

The original bond was offered in evidence, and a photostatic copy thereof is in the record. From this photostatic copy, it fairly appears that the words "twenty" and "five" were written close together, though not connected with a hyphen; that the word "five" is written in the space above with a caret placed between the two words, thus indicating an interlineation. The figure "5" referred to appears to be about twice the height of the other figures, the lower portion or "bowl" thereof being about the size of the height of the other figures, thus indicating that it might have been written first as an "O," and thereafter a stroke made upward and the "O" thus converted into a figure "5."

It further appears that, in preparing the bond, an ordinary printed appearance bond blank form was used, so that it became

necessary to strike out nearly all the printed part of the form, providing for the conditions of the bond, and insert in lieu thereof the conditions required in a supersedeas bond. This was done by interlineation so the bond when presented was for the most part written in interlineations. Wm. M. Franklin, who was Clerk of the Supreme Court, and ex-officio Clerk of the Criminal Court of Appeals, was a witness for plaintiff, and testified, in substance, that the bond in question was presented to him for approval by Prince Freeling, former Attorney General of the state, and another person, whose name he did not know or could not recall, but shown by other testimony to have been Earl Smith, the attorney of record for Terrell in the criminal case. When asked whether the bond was in the same condition as when it was presented to him for his approval, the following appears in the record:

"Mr. Wieck: Objected to as not being in issue, no controversy on that whatever. The Court: That is, I understand you are not making any controversy that it was changed at any time after approval? Mr. Wieck: Certainly not."

The question of alteration of the bond after approval was thus entirely removed from the case. As to the appearance of the bond at the time he approved it, he testified as follows:

"Q. Mr. Franklin, was there anything in this bond that excited your suspicion at the time it was presented to you by General Freeling? Mr. Wieck: We object to that as being incompetent, irrelevant and immaterial; the instrument is there and speaks for itself. The Court: Let him state any facts in reference to the instrument. A. I examined it at the time— The Court: Overruled. Mr. Wieck: Exception. A. —and I noticed the 'five' written up above the word 'twenty' and 'thousand,' but as it appeared in the same handwriting and the same ink and the same pen, and then I noticed the figures, $25,000, and noticed the rest of the bond, it seemed to be written in the same writing, and also the schedule of Horace Webb, I had no suspicions on that score. Q. The bond is filled out in pen and ink, is it not? A. Pen and ink; that is, most of it. Then in this connection I might say this— Mr. Wieck: Wait, we object to that as not being responsive to any question. The Witness: It is a further explanation. The Court: All right, overruled. A. All that was discussed, I made reference to the fact that it looked like a considerable portion of it was scratched out and written in, and some one that was present, either Mr. Freeling or this other party, stated that all the signing was after that was written in there just as it is."

The schedule of Horace Webb referred to by the witness, Franklin, which Webb admitted he signed and verified, is, in part, as follows:

"That I further say I am worth the sum of fifty thousand dollars ($50,000) consisting of the following property located in the county of Osage, state of Oklahoma, and more particularly described as follows, to wit: 320 acres in section 1, range 5, township 27; 76 acres in section 7, range 6, township 27; 36 acres in southwest corner of southwest quarter of section 6-27-5; 80 acres in west half of the northeast quarter of sec. 24-27-5, worth the sum of $50,000."

Smith C. Matson, Assistant Attorney General, to whom the bond was referred by Mr. Franklin, testified in part, as follows:

"Q. Now, Judge, was there anything on the face of this bond that excited your suspicion when it was presented to you by General Freeling? Mr. Wieck: We object to that as incompetent, irrelevant and immaterial. The Court: Well, state any facts in reference to it. Overruled. Mr. Wieck: Exception. A. I looked at the bond only as to the contents of it, and made a cursory examination of it as to the amount, because I knew the court order was $25,000. I just looked at the form of it, that far, and saw that the amount was that, and that there was some interlineations there; that is, the printed form scratched out and a form of supersedeas bond inserted in place of an appearance bond, and I saw that the conditions complied with the statutes and I approved it. That is all I did."

The petition in error contains 16 assignments of error. But five of these assignments are presented in the brief. They are the first and third presented together, the second and fourth presented together, and the ninth.

The first and third assignments are:

"(1) That there is error in the amount of recovery, the same being too large under the instructions and evidence, and (3) that the verdict is contrary to and in disregard of the court's instructions."

Under these assignments defendants present the proposition that the evidence discloses that the bond was changed after they signed it, and by a stranger; or, at least, by an agent of defendants, without authority so to do, and without their knowledge or consent, and that this amounts, under the law, to a spoliation, and therefore defendants could be liable for no more than $20,000, and for this reason the verdict is excessive.

Many authorities are cited in support of this proposition, and without discussing this,

we deem it sufficient to say that if the evidence of defendants was not contradicted. the point would be well taken: Commonwealth National Bank of Dallas, Texas, v. Baughman, 27 Okla. 175, 111 Pac. 332. In the body of the opinion Mr. Justice Hayes, speaking for the court, said:

"The jury was instructed that if, after the execution of the note, the alleged alteration was made by any person without the knowledge or consent of defendant, such alteration vitiated the note. This stated the rule too broadly to the extent that it declares that a material change made in the note by any person vitiates it. The rule prevailing in the courts of the United States is that, if a stranger without any complicity with the payee or holder of the note, changes its terms, such change is a spoliation and does not vitiate the note."

However, the question as to whether the bond was, if changed at all, changed before or after defendant signed and acknowledged the same, was one upon which there was a conflict of evidence. The evidence of defendants, if believed by the jury, was sufficient to make a case of spoliation, but as there was evidence in conflict therewith, together with the important circumstance that each of the defendants justified in a sum double the amount of the bond, as it appears, and the fact that at no time was there an order fixing the supersedeas bond at less than $25,000, all of which appears in evidence, the question was one for the jury under proper instructions. In this connection, the defendants say in their brief:

"The court very properly instructed the jury, as follows: 'You are instructed that if you find from the evidence in this case that the bond sued on was altered after its execution by the defendants, and without their consent, by a stranger to the instrument, or one having no interest therein, or by an agent without authority to alter the same, then you are instructed that such alteration constitutes merely a spoliation and does not render the bond void, and the defendants are liable thereon according to the terms and tenor thereof as it was signed by them, in accordance with its original terms, to wit: $20,000.'"

By this instruction, which defendants concede is correct, and which we also think is correct, if we treat the word "execution," therein contained, as limited to the signing and acknowledgment of the bond (and it was so treated by all parties in the trial court), this question was submitted to the jury, and their finding thereon against defendants is conclusive.

The second and fourth assignments are presented together, and are:

"(2) That the verdict is not supported by the evidence, and that the same is contrary to law."

"(4) That the verdict is contrary to the evidence."

Under these assignments defendants present the proposition that the change was so apparent upon the face of the bond when presented to the clerk for his approval, that the state must be deemed in law to have consented to the change, so as to make the change an alteration within the provision of section 5083, C. O. S. 1921, as follows:

"The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

It is contended that the change, being so apparent upon the face of the instrument as to put a reasonably prudent person on inquiry, and that such inquiry if made would have disclosed the fact to the clerk that the bond was changed after defendants signed it, and that the clerk therefore must have failed to make such inquiry, the state as a matter of law must be deemed to have consented to the change. The parties seem to have treated the question of whether or not the change was so apparent on the face of the bond as to put the clerk on inquiry as a question of fact, as well as the question whether or not the clerk exercised ordinary care and diligence in accepting and approving the bond. The defendants requested instructions of that nature, and the court, though refusing the instructions offered by defendants, gave the substance thereof in its instruction No. 6, which was as follows:

"It is the duty of the obligee, before accepting a written obligation showing on its face a palpable alteration, to make such inquiry or investigation as the circumstances would suggest to a reasonably prudent person, in order to determine whether such alteration was made before or after execution, and where such avenues of inquiry and investigation are ignored or neglected until after liability has accrued, the law charges the obligee with notice of such palpable alteration and with consent thereto.

"And, in this case, if you find and believe that there was anything on the face of the bond, when it was delivered to the Clerk of the Criminal Court of Appeals, to excite the suspicion of the said clerk that the bond had been materially altered, or sufficient to put a prudent person on his guard, the said clerk ought to be held bound to make an investigation before accepting the bond; and

if said clerk failed to make said inquiries and investigation, such as an ordinarily prudent person would have made under the same or similar circumstances, then and in that event the plaintiff cannot recover and your verdict should be for the defendants.

"And you are further instructed, in this connection, that the Clerk of the Criminal Court of Appeals of the state of Oklahoma was acting in behalf of the state of Oklahoma, and his acts in accepting and approving said bond were the acts of the state of Oklahoma."

The verdict of the jury under this instruction, which was not excepted to by defendants, is, in effect, a finding that the change in the bond, if any, was not so apparent on its face as to charge the plaintiff with consent thereto, and also, in effect, that the clerk did not fail to make such inquiry as a reasonably prudent person would make concerning the matter before approving the bond.

The propriety of submitting the question of whether or not the change was so apparent on the face of the bond as to put the clerk upon inquiry seems to have been approved in Bailey et al. v. Evans et al., 100 Okla. 278, 229 Pac. 221, wherein this court said:

"The finding of the trial court in the instant case that the bond was in fact altered after its execution and before delivery, and that the alteration was apparent, being binding upon this court, the only question remaining for determination is as to the materiality of such alteration."

We are of the opinion that, under the particular facts in this case, considering the bond and the justification of the sureties attached thereto, this was a proper question of fact for the jury. But assuming that that question was one of law for the determination of the court, and assuming that the change was so apparent on the face of the bond as to require the clerk to use reasonable care in approving it, the question as to whether such reasonable care was exercised by the clerk was certainly a question for the jury.

The verdict of the jury is, in effect, a finding against the defendants on this point and binding upon this court.

The only other assignment presented is:

"Error of the court in giving to the jury instruction No. 2, which was objected and excepted to before the giving thereof."

That part of the instruction complained of is as follows:

"You are instructed that the burden of proof in this case is on the plaintiff to prove by a preponderance of the evidence all the material allegations of his petition, and that the burden of proof is on the defendant to show the alteration, if any, as set forth in the separate answers of said defendants."

To the same effect was instruction No. 2.

In support of their contention on this point, defendants cite State v. Roberts (Kan.) 15 Pac. 593.

We have examined the above case, together with other cases cited from other jurisdictions, and we think they support the contention of defendants, that is, that where the alteration is shown upon the face of the instrument sued upon, the burden of explaining the alteration is upon the plaintiff. On this question, however, the decisions are by no means uniform. Whatever may be the rule in other jurisdictions, this question seems to have been conclusively settled in this state against the contention of defendants. In Richardson v. Felkner, 9 Okla. 513, 60 Pac. 270, it was held:

"Where the execution of a note is denied under oath, and on the trial the genuineness of the signatures to the note is admitted, but it is claimed that a material alteration has been made in the note subsequent to its execution; the presumption will be entertained that all alterations or interlineations were made prior to and with the consent of the makers, and the burden will be on the one alleging such alterations to show that they were made subsequent to the execution of the instrument, and without the consent of the makers."

And in the body of the opinion, it is said:

"It was contended by the defendants below, that the note sued on had been altered after its delivery to the agent of the payee, by erasing the word 'on' between the word 'buildings' and the word 'lot,' and inserting in lieu thereof the word 'and.' That as originally executed the note was given 'for purchase price of buildings on lot 1 in block 28, in the city of Perry, O. T.,' and not 'for purchase price of buildings and lot,' and this issue was presented by the verified denial of the execution of the note sued on."

The case is cited, with approval, in Cavitt v. Robertson, 42 Okla. 619, 142 Pac. 299, and in Campbell v. Vance. 118 Okla. 283, 248 Pac. 634. Our attention has not been called to any case in this state holding the contrary, and we have found none. In the case of Maldaner v. Smith, 102 Wis. 30, 78 N. W. 140. where facts very similar to the ones here involved were shown, it was said:

"Where an interlineation in a note exists, but the instrument appears to have been written all at the same time, by the same

hand and with the same ink, the presumptions are against a forgery, and in the absence of ·clear and satisfactory evidence to the contrary such presumption should prevail."

We think, however, that, under the facts shown in this case, it was not so apparent from the face of the instrument, taken in connection with the verification of the justification of each defendant, showing that they justified in double the amount of the penalty of the bond as it appears, as would under the authorities cited by defendants shift the burden of proof to plaintiff to explain the change which defendants contend was in fact made. The justification of the sureties must, in such case, be in double the amount of the penalty of the bond. The affidavits of each defendant was that he was worth the sum of $50,000. Defendant Webb scheduled property worth $50,000, none of which he claimed as exempt. Defendant Beal scheduled property which he swore was worth $25.000. In each instance the notary certified over his official signature and seal that the affidavits were read to defendants in full before being subscribed and sworn to by them.

In such circumstances, we think there was no error in the instruction complained of.

The judgment should be, and is hereby, affirmed.

LEACH, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.